Nos. 23-2358, 23-2359

# In The United States Court of Appeals for the Seventh Circuit

---

IN RE: LION AIR FLIGHT JT 610 CRASH

---

LAURA SMITH, as duly appointed representative and Independent Administrator of the ESTATE OF ANDREA MANFREDI, deceased, *et al.*,

*Plaintiffs-Appellants,*

v.

THE BOEING COMPANY, *et al.*,

*Defendants-Appellees.*

---

TERRENCE BUEHLER, Personal Representative and Independent Administrator of the ESTATE OF LIU CHANDRA, deceased, *et al.*,

*Plaintiffs-Appellants,*

v.

THE BOEING COMPANY, et al.,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Northern District of Illinois
Lead Case No. 18-cv-07686 – Hon. Thomas M. Durkin

---

**JOINT RESPONSE BRIEF OF DEFENDANTS-APPELLEES**

---

Nicholas C. Bart
  *Counsel of Record*
FITZPATRICK, HUNT & PAGANO LLP
10 S. LaSalle Street, Suite 3400
Chicago, IL 60603
Telephone: (312) 728-4900
nick.bart@fitzhunt.com

*Counsel for Defendants-Appellees
Rockwell Collins, Inc. and Rosemount
Aerospace, Inc.*

Michael R. Huston*
  *Counsel of Record*
Mack H. Shultz, Jr.
Eric B. Wolff
Lauren Pardee Ruben
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
Telephone: (202) 434-1630
mhuston@perkinscoie.com

*Admitted only in Washington, D.C.

*Counsel for Defendants-Appellees The
Boeing Company, Boeing Int'l Sales Corp.,
Boeing Domestic Sales Corp., Boeing Sales
Corp., and Boeing Financial Corp.*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>23-2358; 23-2359</u>

Short Caption: <u>Laura Smith, et al. v. Boeing Company, et al.; Terrence Buehler, et al. v. Boeing Company, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☑    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

<u>The Boeing Company; Boeing International Sales Corporation ("BISC"); Boeing Domestic Sales Corporation ("BDSC")</u>

<u>Boeing Sales Corporation ("Boeing Sales") ; and Boeing Financial Corporation ("Boeing Financial")</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Perkins Coie LLP; Winston & Strawn LLP</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

<u>BISC, BDSC, Boeing Sales and Boeing Financial are wholly owned subsidiaries of The Boeing Company which is publicly traded; The Boeing Company has no parent corporation.</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

<u>As of 06/19/23, no corporation has filed a Schedule 13G with the SEC disclosing ownership of 10% or more</u>

<u>of The Boeing Company's stock</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>n/a</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>n/a</u>

Attorney's Signature: <u>/s/ Michael R. Huston</u>    Date: <u>08/04/23</u>

Attorney's Printed Name: <u>Michael R. Huston</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes ☑  No ☐

Address:  **UPDATED ADDRESS**: 2901 North Central Avenue, Suite 2000

    Phoenix, AZ 85012-2788

Phone Number: <u>202.434.1630</u>    Fax Number: <u>202.654.6211</u>

E-Mail Address: <u>mhuston@perkinscoie.com</u>

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>23-8013; 23-8014</u>

Short Caption: <u>Laura Smith, et al. v. Boeing Company, et al.; Terrence Buehler, et al. v. Boeing Company, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

<u>The Boeing Company; Boeing International Sales Corporation ("BISC"); Boeing Domestic Sales Corporation ("BDSC")</u>

<u>Boeing Sales Corporation ("Boeing Sales") ; and Boeing Financial Corporation ("Boeing Financial")</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Perkins Coie LLP; Winston & Strawn LLP</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>BISC, BDSC, Boeing Sales and Boeing Financial are wholly owned subsidiaries of The Boeing Company</u> which is publicly traded; The Boeing Company has no parent corporation.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>As of 06/19/23, no corporation has filed a Schedule 13G with the SEC disclosing ownership of 10% or more</u> of The Boeing Company's stock

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>n/a</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>n/a</u>

Attorney's Signature: <u>/s/ Mack H. Shultz</u>    Date: <u>06/20/23</u>

Attorney's Printed Name: <u>Mack H. Shultz</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☐  **No** ☑

Address: <u>1201 Third Avenue Suite 4900</u>

        <u>Seattle WA 98101</u>

Phone Number: <u>206.359.8000</u>    Fax Number: <u>206.359.9000</u>

E-Mail Address: <u>MShultz@perkinscoie.com</u>

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>23-8013; 23-8014</u>

Short Caption: <u>Laura Smith, et al. v. Boeing Company, et al.; Terrence Buehler, et al. v. Boeing Company, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

          ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

<u>The Boeing Company; Boeing International Sales Corporation ("BISC"); Boeing Domestic Sales Corporation ("BDSC")</u>

<u>Boeing Sales Corporation ("Boeing Sales") ; and Boeing Financial Corporation ("Boeing Financial")</u>

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Perkins Coie LLP; Winston & Strawn LLP</u>

(3)     If the party, amicus or intervenor is a corporation:

     i)     Identify all its parent corporations, if any; and

          <u>BISC, BDSC, Boeing Sales and Boeing Financial are wholly owned subsidiaries of The Boeing Company</u> which is publicly traded; The Boeing Company has no parent corporation.

     ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

          <u>As of 06/19/23, no corporation has filed a Schedule 13G with the SEC disclosing ownership of 10% or more</u>

          of The Boeing Company's stock

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

     n/a

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

     n/a

Attorney's Signature: <u>/s/ Eric B. Wolff</u>      Date: <u>06/20/23</u>

Attorney's Printed Name: <u>Eric B. Wolff</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☑

Address: <u>1201 Third Avenue Suite 4900</u>

         <u>Seattle WA 98101</u>

Phone Number: <u>206.359.8000</u>      Fax Number: <u>206.359.9000</u>

E-Mail Address: <u>EWolff@perkinscoie.com</u>

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-8013; 23-8014

Short Caption: Laura Smith, et al. v. Boeing Company, et al.; Terrence Buehler, et al. v. Boeing Company, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

The Boeing Company; Boeing International Sales Corporation ("BISC"); Boeing Domestic Sales Corporation ("BDSC")

Boeing Sales Corporation ("Boeing Sales") ; and Boeing Financial Corporation ("Boeing Financial")

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Perkins Coie LLP; Winston & Strawn LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        BISC, BDSC, Boeing Sales and Boeing Financial are wholly owned subsidiaries of The Boeing Company which is publicly traded; The Boeing Company has no parent corporation.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        As of 06/19/23, no corporation has filed a Schedule 13G with the SEC disclosing ownership of 10% or more of The Boeing Company's stock

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: /s/ Lauren Pardee Ruben    Date: 06/20/23

Attorney's Printed Name:  Lauren Pardee Ruben

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address:  1900 Sixteenth Street Suite 1400

    Denver CO 80202

Phone Number: 303.291.2300    Fax Number:  303.291.2400

E-Mail Address: lruben@perkinscoie.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>23-8013, 23-8014</u>

Short Caption: <u>IN RE: LION AIR FLIGHT JT 610 CRASH</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    <u>Rockwell Collins, Inc.</u>

    <u>Rosemount Aerospace, Inc.</u>

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    <u>Fitzpatrick, Hunt & Pagano, LLP</u>

(3)     If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and

        <u>Raytheon Technologies, Corp is the parent of Rockwell Collins, Goodrich Corp is the parent of Rosemount</u>

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>Raytheon Technologies, Corp is publicly held and owns 100% of the stock of Rockwell and Goodrich Corp.</u>

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    <u>N/A</u>

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    <u>N/A</u>

Attorney's Signature: <u>*Nicholas Bart*</u>      Date: <u>June 6, 2023</u>

Attorney's Printed Name: <u>Nicholas C. Bart</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [✓]   No [ ]

Address: <u>10 S. LaSalle St., Suite 3400</u>

    <u>Chicago, IL 60603</u>

Phone Number: <u>312-728-4900</u>      Fax Number: <u>312-728-4950</u>

E-Mail Address: <u>nick.bart@fitzhunt.com</u>

rev. 12/19 AK

## TABLE OF CONTENTS

**Page**

Introduction .................................................................................... 1

Jurisdictional Statement ................................................................ 3

Statement of the Issues ................................................................. 4

Relevant Statutory Provisions ...................................................... 4

Statement of the Case ................................................................... 4

    A.  Statutory Background .......................................................... 4

    B.  The Present Controversy ..................................................... 11

        1.  The aviation accident and resulting litigation .................. 11

        2.  The Chandra plaintiffs ...................................................... 12

        3.  The Manfredi plaintiffs ..................................................... 12

        4.  The district court's pretrial order ...................................... 13

Summary of Argument ................................................................. 15

Standard of Review ...................................................................... 18

Argument ....................................................................................... 19

I.  The district court correctly determined that the Plaintiffs are not
entitled to a jury trial on their DOHSA claims in federal court. ................... 19

    A.  A statutory cause of action "in admiralty" has never guaranteed
a jury trial except where Congress specifically provided. ......................... 19

    B.  Plaintiffs' contrary arguments are unavailing. ......................................... 24

        1.  The DOHSA cause of action is not affected by other federal
jurisdictional statutes or state courts' jurisdiction ............................ 24

            a.  Congress assigned the DOHSA cause of action to courts
"in admiralty" ............................................................................ 24

            b.  State courts' jurisdiction is irrelevant............................................ 27

        2.  The saving-to-suitors clause of Section 1333(1) does not
apply to statutory causes of action that Congress designated
in admiralty .......................................................................................... 29

3.  Plaintiffs cannot overcome the statutory text with appeals to legislative history or public policy ........................................ 33

II. The district court correctly determined that DOHSA is the exclusive source of recovery in connection with a death on the high seas..................... 36

A.  The district court adhered to DOHSA's text............................................. 36

B.  Plaintiffs' pre-death injury and property damage claims are preempted by DOHSA. .................................................. 37

1.  DOHSA's text and Supreme Court precedent establish that DOHSA's remedies are exclusive............................................ 38

2.  DOHSA does not permit common law claims for pre-death suffering before a fatal airplane crash. ................................. 41

3.  DOHSA does not permit common law claims for property lost in a fatal airplane crash. ................................................. 45

Conclusion.................................................................................... 48

Certificate of Compliance ........................................................ 49

Certificate of Service................................................................. 50

Addendum ...............................................................................Add.1

TABLE OF AUTHORITIES

**Page(s)**

CASES

*American Ins. Co.* v. *356 Bales of Cotton*,
    26 U.S. (1 Pet.) 511 (1828) ........................................................... 20

*Atl. & Gulf Stevedores, Inc.* v. *Ellerman Lines, Ltd.*,
    369 U.S. 355 (1962) .................................................................. 8, 21

*The Belfast*,
    74 U.S. (7 Wall.) 624 (1868) ........................................................ 21

*Benion* v. *Bank One, Dayton, N.A.*,
    144 F.3d 1056 (7th Cir. 1998) ...................................................... 33

*Bernard* v. *World Learning Inc.*,
    No. 09-cv-20309, 2010 WL 11505188 (S.D. Fla. June 4, 2010) ............ 44

*Brotherhood Shipping Co.* v. *St. Paul Fire & Marine Ins.*,
    985 F.2d 323 (7th Cir. 1993) ........................................................ 21

*City of Monterey* v. *Del Monte Dunes at Monterey, Ltd.*,
    526 U.S. 687 (1999) .................................................................... 27

*Curry* v. *Chevron, USA*,
    779 F.2d 272 (5th Cir. 1985) ........................................................ 23

*Dooley* v. *Korean Air Lines Co.*,
    524 U.S. 116 (1998) ...................................................1–2, 4, 10, 15, 17–18, 24, 30,
                                                                        33, 36–37, 39–41, 43, 45–47

*Drummond Co., Inc.* v. *Conrad & Scherer, LLP*,
    885 F.3d 1324 (11th Cir. 2018) ..................................................... 37

*Favaloro* v. *S/S Golden Gate*,
    687 F. Supp. 475 (N.D. Cal. 1987) ................................................ 23

*Feltner* v. *Columbia Pictures Television, Inc.*,
    523 U.S. 340 (1998) .................................................................... 27

*Fitzgerald* v. *United States Lines Co.*,
    374 U.S. 16 (1963) .................................................................. 21, 26

TABLE OF AUTHORITIES

**Page(s)**

*Fojtasek* v. *NCL (Bahamas) Ltd.*,
   613 F. Supp. 2d 1351 (S.D. Fla. 2009) ............................................................ 43, 44

*Friedman* v. *Mitsubishi Aircraft Int'l, Inc.*,
   678 F. Supp. 1064 (S.D.N.Y. 1988) ...................................................................... 23

*Ghotra* v. *Bandila Shipping, Inc.*,
   113 F.3d 1050 (9th Cir. 1997) ............................................................................... 29

*Gund* v. *Pilatus Aircraft, Ltd.*,
   Nos. C07-4902, C08-3795, 2010 WL 887376
   (N.D. Cal. Mar. 11, 2010) ...................................................................................... 47

*The Harrisburg*,
   119 U.S. 199 (1886) ............................................................................................. 5, 33

*Hays* v. *John Crane, Inc.*,
   No. 09-cv-81881, 2014 WL 10658453 (S.D. Fla. Oct. 10, 2014) ........................... 44

*Heath* v. *Am. Sail Training Ass'n*,
   644 F. Supp. 1459 (D.R.I. 1986) ........................................................................... 23

*In re Air Disaster Near Honolulu, Hawaii on Feb. 24, 1989*,
   792 F. Supp. 1541 (N.D. Cal. 1990) ...................................................................... 23

*In re Complaint of McCarthy Bros. / Clark Bridge*,
   83 F.3d 821 (7th Cir. 1996) ................................................................................... 19

*In re Korean Air Lines Disaster of Sept. 1, 1983*,
   704 F. Supp. 1135 (D.D.C. 1988),
   *vacated in part on other grounds*, 932 F.2d 1475 (D.C. Cir. 1991) ...................... 24

*In re Lion Air Flight JT 610 Crash*,
   No. 18-cv-07686 ..................................................................................................... 12

*Ingram* v. *Wayne County*,
   No. 22-1262, 2023 WL 5622914 (6th Cir. Aug. 31, 2023) .................................... 37

*Int'l Fin. Servs. Corp.* v. *Chromas Techs. Canada, Inc.*,
   356 F.3d 731 (7th Cir. 2004) ..................................................................... 19, 28, 35

*Jacobs* v. *N. King Shipping Co.*,
   180 F.3d 713 (5th Cir. 1999) ................................................................................. 40

## TABLE OF AUTHORITIES

**Page(s)**

*Kennedy* v. *Carnival Corp.*,
    385 F. Supp. 3d 1302 (S.D. Fla. 2019) .................................................. 44

*Kubiak* v. *City of Chicago*,
    810 F.3d 476 (7th Cir. 2016) ................................................................. 18

*LaCourse* v. *Def. Support Servs. LLC*,
    No. 16-cv-170, 2018 WL 7342153 (N.D. Fla. Oct. 31, 2018) ................................ 23

*LaCourse* v. *PAE Worldwide Inc.*,
    980 F.3d 1350 (11th Cir. 2020) ................................................... 40–42, 44

*Lasky* v. *Royal Caribbean Cruises, Ltd.*,
    850 F. Supp. 2d 1309 (S.D. Fla. 2012) ................................................... 23

*Leon* v. *Galceran*,
    78 U.S. (11 Wall.) 185 (1870) ............................................................... 21

*Lu Junhong* v. *Boeing Co.*,
    792 F.3d 805 (7th Cir. 2015) ............................................................... 25

*Madruga* v. *Superior Ct. of State of California*,
    346 U.S. 556 (1954) .................................................................... 8, 29

*Miles* v. *Apex Marine Corp.*,
    498 U.S. 19 (1990) ............................................................... 5, 20, 22

*Mobil Oil Corp.* v. *Higginbotham*,
    436 U.S. 618 (1978) ............................................................. 15, 39–40

*Modica* v. *Hill*,
    No. 96-cv-1121, 1999 WL 52153 (E.D. La. Jan. 29, 1999) ................................ 23

*Moragne* v. *States Marine Lines, Inc.*,
    398 U.S. 375 (1970) ............................................................. 5, 32–34

*Nygaard* v. *Peter Pan Seafoods, Inc.*,
    701 F.2d 77 (9th Cir. 1983) ............................................................... 45

*Offshore Logistics, Inc.* v. *Tallentire*,
    477 U.S. 207 (1986) ..................................... 2, 11, 14, 16–17, 23–24,
                                          27–28, 32, 37, 39, 41

# TABLE OF AUTHORITIES

**Page(s)**

*Panama Refining Co.* v. *Vasquez,*
    271 U.S. 557 (1926) ........................................................ 30

*Parsons* v. *Bedford,*
    28 U.S. (3 Pet.) 433 (1830) (Story, J.) ................................ 27

*Red Cross Line* v. *Atlantic Fruit Co.,*
    264 U.S. 109 (1924) ........................................................ 22

*Reistetter* v. *Royal Caribbean Cruises Ltd.,*
    No. 08-cv-20462, 2008 WL 5397139 (S.D. Fla. Dec. 18, 2008) ............ 23

*Rodrigue* v. *Aetna Casualty & Surety Co.,*
    395 U.S. 352 (1969) ........................................................ 43

*Romero* v. *Int'l Terminal Operating Co.,*
    358 U.S. 354 (1959) ............................................. 2, 7–9, 15–17, 19–22,
    25, 27–29, 31, 33, 35

*The Sarah,*
    21 U.S. (8 Wheat) 391 (1823) .............................................. 6

*Smith* v. *Pan Air Corp.,*
    684 F.2d 1102 (5th Cir. 1982) ......................................... 46, 47

*T.S.* v. *County of Cook,*
    67 F.4th 884 (7th Cir. 2023) ........................................... 18, 37

*Tallentire* v. *Offshore Logistics, Inc.,*
    800 F.2d 1390 (5th Cir. 1986) ............................................ 23

*Tozer* v. *LTV Corp.,*
    No. HM81-2134, 1983 WL 705 (D. Md. May 27, 1983) ....................... 24

*United States* v. *Sanders,*
    708 F.3d 976 (7th Cir. 2013) ............................................. 18

*Varner* v. *Celebration Cruise Line, LLC,*
    No. 15-cv-60867, 2015 WL 12868132 (S.D. Fla. Sept. 15, 2015) .......... 23

*Waring* v. *Clarke,*
    46 U.S. 441 (1847) .................................................... 2, 6, 7

## TABLE OF AUTHORITIES

**Page(s)**

*Wingerter* v. *Chester Quarry Co.*,
   185 F.3d 657 (7th Cir. 1998) ...................................................... 15

*Wisconsin Central Ltd.* v. *United States*,
   138 S. Ct. 2067 (2018) ...................................................... 20, 23

### CONSTITUITONAL PROVISIONS AND STATUTES

U.S. CONST. art 1, § 8, cl. 9 ...................................................... 20

U.S. CONST. amend VII ...................................................... 6

Computer Fraud and Abuse Act,
   18 U.S.C. § 1030 *et seq.* ...................................................... 3, 13, 37

Death on the High Seas Act,
   46 U.S.C. § 30301 *et seq.* ...................................................... 1–5, 7–47, Add.2

46 U.S.C. § 30302 ...................................... 1, 3, 5, 10, 14, 16–20, 24, 26–27
                                                        30–31, 36, 38, 42, 45–46, Add.2

46 U.S.C. § 30303 ...................................... 1, 10, 11, 18, 36, 38, 42, 45–46, Add.2

46 U.S.C. § 30304 ...................................................... 11, 38, Add.2

46 U.S.C. § 30305 ...................................................... 11, 38, Add.2

46 U.S.C. § 30306 ...................................................... 11, 38, Add.3

46 U.S.C. § 30307 ...................................................... 10, 38, 42, Add.3

46 U.S.C. § 30307(b) ...................................................... 1, 18, 36, 41, Add.3

46 U.S.C. § 30308 ...................................................... 11, 27, Add.3

46 U.S.C. § 30308(a) ...................................................... 14, Add.3

41 Stat. 537 § 1 (1920) ...................................................... 1, 5, 20, Add.1

41 Stat. 538 § 7 ...................................................... 11, Add.2

## TABLE OF AUTHORITIES

**Page(s)**

Great Lakes Act of 1845,
   28 U.S.C. § 1873 ................................................................ 9, 22, 33

   5 Stat. 726 ................................................................................. 9

Jones Act,
   41 Stat. 988, 1007 § 33 (1920)................................... 2, 9–10, 16, 22, 32

   46 U.S.C. § 30104(a) ......................................................... 2, 16, 22

Judiciary Act of 1789,
   1 Stat. 73, 77 § 9 ...........................................1, 6, 7, 20–21, 29, Add.1

Multiparty, Multiforum Trial Jurisdiction Act of 2002,
   28 U.S.C. § 1369 .......................................................... 3, 12, 25, 26

   28 U.S.C. § 1441 ............................................................................ 35

Ship Mortgage Act of 1920,
   46 U.S.C. § 31325 *et seq.* ........................................................... 31

   46 U.S.C. § 31325 ......................................................................... 31

   41 Stat. 988 ................................................................................. 31

   41 Stat. 1003 § 30(J)(c) ............................................................... 31

Suits in Admiralty Act,
   46 U.S.C. 30901 *et seq.* ......................................................... 22, 31

   46 U.S.C. § 30903 ........................................................................... 9

   41 Stat. 525 § 2 ............................................................................. 22

   74 Stat. 912 § 3 ............................................................................. 22

28 U.S.C. § 1292(b) ...................................................... 3, 15, 17–18, 36

28 U.S.C. § 1332............................................................................ 25

28 U.S.C. § 1333(1) ...........................3, 7–8, 12, 14, 16, 21, 29, 30, Add.1

## TABLE OF AUTHORITIES

**Page(s)**

### RULES

Fed. R. Civ. P. 9 ...................................................................... 26

Fed. R. Civ. P. 9(h) ................................................................... 8

Fed. R. Civ. P. 9(h)(1) ........................................................ 26, 28

Fed. R. Civ. P. 12(b)(6) ..................................................... 4, 13, 18

Fed. R. Civ. P. 38(e) ............................................. 16, 19, 26, 28, 35

### OTHER AUTHORITIES

59 Cong. Rec. 4482 60th Cong., 2d Sess. (1920) ....................... 9, 33

Brainerd Currie, *The Silver Oar and All That:*
*A Study of the Romero Case*, 27 Chi. L. Rev. 1 (1959) ...................... 7, 31

14A Charles Alan Wright & Arthur Miller, *Federal Practice and*
*Procedure Jurisdiction* (4th ed. Apr. 2023 update) ........................ 19, 41

16 Charles Alan Wright & Arthur Miller, *Federal Practice and*
*Procedure Jurisdiction* (3d ed. Apr. 2023 update) ............................ 18

Grant Gilmore & Charles Black Jr.,
*The Law of Admiralty* (2d ed. 1975) ........................................ 9, 30–31

Grant Gilmore & Charles Black Jr.,
*The Law of Admiralty* (1st ed. 1957) ............................................ 7

Lily Kurland, *A Trying Balance: Determining the Trier of Fact in*
*Hybrid Admiralty-Civil Cases*, 90 Wash. U.L. Rev. 1293 (2013) ........................ 31

Mark Thomas Mahfouz, *Whose Interests Are More Important: Should A*
*Plaintiff's Rule 9(h) Designation "Trump" A Counterclaimant's*
*Right to Jury Trial?*, 27 Tul. Mar. L.J. 277 (2002) ............................ 31

Robert M. Hughes, *Death Actions in Admiralty*, 31 Yale L.J. 115 (1921) ................... 5

## INTRODUCTION

This case concerns Congress's express limits on the statutory cause of action under the Death on the High Seas Act (DOHSA), 46 U.S.C. § 30301 *et seq.* Plaintiffs-Appellants are family members of two passengers who died tragically in 2018 when a Boeing 737 MAX 8 aircraft crashed in the Java Sea off the coast of Indonesia.

Before DOHSA, Plaintiffs would not have been able to recover for the deaths of their loved ones, because the general law of admiralty "did not permit an action" for a death on the high seas. *Dooley* v. *Korean Air Lines Co.*, 524 U.S. 116, 121 (1998). Congress filled that void with DOHSA in 1920 by providing that certain specified family members "may maintain a suit for damages in the district courts of the United States, in admiralty," against the vessel or person liable for a death on the high seas. 41 Stat. 537 § 1; *see* 46 U.S.C. § 30302 (as amended). But Congress made deliberate choices about who can sue, what form the action must take, and what damages can be recovered. Those limitations include a requirement that the DOHSA cause of action must be heard "in admiralty"—a form of action that, since the first Judiciary Act of 1789, has never carried the right to a jury trial in federal court. *See* 1 Stat. 73, 77 § 9. Congress provided further that "[t]he recovery … shall be a fair compensation for the pecuniary loss sustained by the individual … benefi[ciaries]"—not any recovery for the decedent's own injuries or losses. 46 U.S.C. § 30303. An amendment in 2000 authorized "additional compensation … for nonpecuniary damages" in cases like this where "the death resulted from a commercial aviation accident" on the high seas more than 12 nautical miles from the United States, but Congress reiterated that "punitive damages are not recoverable." 46 U.S.C. § 30307(b).

The district court correctly applied DOHSA's terms in the pretrial order under review here. First, because Congress expressly designated the cause of action "in admiralty," "the Death on the High Seas Act … [does not] allow[ ] a jury trial." *Romero* v. *Int'l Terminal Operating Co.*, 358 U.S. 354, 371 n.28 (1959). That result is compelled by the statutory text and the legislative context: Congress in 1920 saw a fundamental difference between federal courts sitting in admiralty versus at law, and Congress knew that "trial by jury" had never been "the mode of trial of issues of fact" for "civil causes in admiralty." *Waring* v. *Clarke*, 46 U.S. 441, 460 (1847). Nothing in DOHSA shows "the slightest indication" of intent to "change … the time-sanctioned mode of trying suits in admiralty without a jury." *Romero*, 358 U.S. at 369. Today, the Federal Rules of Civil Procedure incorporate the same no-jury rule for admiralty claims like DOHSA. And DOHSA's meaning is confirmed by the Jones Act, passed just two months later, where Congress created another wrongful death remedy for seamen killed during their employment and *expressly* guaranteed a jury trial. 41 Stat. 988, 1007 § 33 (June 5, 1920); 46 U.S.C. § 30104(a). The Jones Act proves beyond all doubt that Congress had no similar intention for DOHSA claims.

Second, the district court also correctly determined that Plaintiffs are not entitled to circumvent Congress's carefully crafted remedial regime with additional non-DOHSA causes of action. The Supreme Court has described DOHSA's "comprehensive scope" and held repeatedly that Congress intended it to "provide[ ] the exclusive" source of recovery for deaths on the high seas, preempting other causes of action under both state law and general maritime law arising from the same incident. *Dooley*, 524 U.S. at 122–124 (general maritime claims); *Offshore Logistics, Inc.* v. *Tallentire*,

477 U.S. 207, 232 (1986) (state law claims). Plaintiffs may not supplant Congress's considered judgments with additional claims beyond what DOHSA allows.

## JURISDICTIONAL STATEMENT

The jurisdictional statements in Plaintiffs' briefs are not complete and correct.

As relevant here, Plaintiffs' operative complaints pleaded claims under DOHSA, which creates a "civil action in admiralty," 46 U.S.C. § 30302, as well as the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, and Illinois state law. The district court accordingly had subject matter jurisdiction over Plaintiffs' actions under 28 U.S.C. § 1333(1), which grants jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction," and under the Multiparty, Multiforum Trial Jurisdiction Act of 2002 (MMTJA), 28 U.S.C. § 1369, because Plaintiffs' claims arise out of a single accident in which more than 75 people died at a discrete location; minimal diversity exists; and a substantial part of the accident took place outside the place where the defendants reside. Plaintiffs' jurisdictional statements (Manfredi Br. 1 & n.1, Chandra Br. 2) correctly recount the facts and the parties' citizenship supporting jurisdiction under MMTJA. But Plaintiffs do not correctly describe the district court's "admiralty jurisdiction" or its "'law-side' jurisdiction." Manfredi Br. 1.

This Court has appellate jurisdiction under 28 U.S.C. § 1292(b). On December 20, 2022, the district court issued a pretrial order dismissing all of Plaintiffs' non-DOHSA claims under Federal Rule of Civil Procedure 12(b)(6) on the ground that DOHSA preempts or displaces those claims. Joint Appendix JA178–JA197. The court also ordered that Plaintiffs' DOHSA claims must be tried to the bench rather than a jury. *Id.* On May 25, 2023, the district court granted Plaintiffs' motions to certify for inter-

locutory appeal the question whether Plaintiffs are entitled to a jury trial on their sole remaining DOHSA claims. JA212. That same day, the district court amended its pretrial order to incorporate the certification for interlocutory appeal. A20. Plaintiffs timely petitioned this Court for permission to appeal the district court's order on June 2, 2023 (Manfredi plaintiffs) and June 5, 2023 (Chandra plaintiffs), joined by defendant Xtra Aerospace, LLC. This Court granted Plaintiffs' petitions on July 6, 2023.

## STATEMENT OF THE ISSUES

1. As certified by the district court, "whether a plaintiff in federal court is entitled to a jury trial under the Seventh Amendment when the plaintiff's sole claim arises under DOHSA, and the plaintiff has a concurrent basis for common law jurisdiction (such as diversity)." A20.

2. Whether Plaintiffs' claims for alleged pre-death injury and damaged property of their loved ones are preempted or displaced by DOHSA.

## RELEVANT STATUTORY PROVISIONS

Relevant statutory provisions are reproduced in an addendum to this brief at Add.1–Add.3.

## STATEMENT OF THE CASE

### A. Statutory Background

Before 1920, "there was no remedy for death on the high seas." *Moragne* v. *States Marine Lines, Inc.*, 398 U.S. 375, 393 (1970); *see The Harrisburg*, 119 U.S. 199, 213 (1886). "[T]he general law of admiralty permitted a person injured by tortious conduct to sue for damages, but did not permit an action to be brought when the person was killed by that conduct." *Dooley*, 524 U.S. at 121. That rule "stemmed from the theory

that a right of action was personal to the victim and thus expired when the victim died." *Id.* States addressed that issue by enacting wrongful-death and survival statutes for deaths in their territorial waters. *See Miles* v. *Apex Marine Corp.*, 498 U.S. 19, 23–25 (1990). But a gap remained for deaths on the high seas—*i.e.*, beyond states' territorial waters. *Id.* at 25. That gap meant that family members of victims of high-profile high-seas disasters like *Titanic* had no means of recovery. *See* Robert M. Hughes, *Death Actions in Admiralty*, 31 Yale L.J. 115, 117 (1921).

Congress "filled this void" with DOHSA in 1920. *Miles*, 498 U.S. at 25. The Act originally provided "[t]hat whenever the death of a person shall be caused by a wrongful act, neglect, or default occurring on the high seas beyond a maritime league from the shore of any State [or federal territory], the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, … against the vessel, person, or corporation which would have been liable if death had not ensued." 41 Stat. 537 § 1. Today that same cause of action exists in 46 U.S.C. § 30302 with only slight changes in wording: "When the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States," a "personal representative of the decedent"—specifically a "spouse, parent, child, or dependent relative"—may bring "a civil action in admiralty against the person or vessel responsible."

Congress's decision in 1920 to place the DOHSA cause of action "in the [federal] district courts … in admiralty" was intentional and significant. As Chief Justice Marshall had described, federal courts since the Founding had recognized a fundamental distinction between "sit[ting] as a Court of common law" and "sit[ting] as a Court of

Admiralty." *The Sarah*, 21 U.S. (8 Wheat) 391, 394 (1823). "Although the two juris-
dictions [were] vested in the same tribunal" (the federal district courts) by Section 9
of the first Judiciary Act, Congress would have understood them in 1920—before the
Federal Rules of Civil Procedure and the eventual merger of law, equity, and admi-
ralty—to be "as distinct from each other as if they were vested in different tribunals,"
with procedures that "can[not] … be blended." *Id.*; *see also Waring*, 46 U.S. at 460
("cases in admiralty [are] another class distinguishable from both" suits "at common
law" and those "in equity," as to "the system of laws determining them [and] the man-
ner of trial").

Among the most important procedural differences between federal court actions
at law and those in admiralty was the jury. Chief Justice Marshall in 1823 had
described the "settled" rule that, "[i]n cases of admiralty and maritime jurisdiction,
… the trial is to be by the Court," whereas "[i]n all cases at common law, the trial
must be by jury." *The Sarah*, 21 U.S. at 394. The Constitution embraces that rule by
guaranteeing a right to a jury trial "in Suits at common law" whose value exceeds
twenty dollars, but not requiring jury trials in actions in admiralty. U.S. CONST.
amend VII; *see Waring*, 46 U.S. at 460 ("[T]here is no provision, as the constitution
originally was, from which it can be inferred that civil causes in admiralty were to be
tried by a jury, contrary to what the framers of the constitution knew was the mode
of trial of issues of fact in the admiralty.").

In light of that history, there can be no doubt about the effect of Congress's choice
to create a new cause of action "in admiralty" in 1920. It was "unquestioned" among
"judges, scholars[,] and lawyers" at the time "that the original maritime jurisdiction

of the federal courts had, for all practical purposes, been left unchanged since the [Judiciary] Act of 1789." *Romero*, 358 U.S. at 369. And it was equally well understood that such "jurisdiction was exercised according to the historic procedure in admiralty, by a judge without a jury." *Id.* at 363; *see id.* at 368–369 (noting the "long-established, smoothly functioning since 1789 … method by which federal courts had administered admiralty law from the beginning," and "the time-sanctioned mode of trying suits in admiralty without a jury"). Preeminent twentieth century scholars thus recognized DOHSA as one of those "actions of a maritime character founded on acts of Congress" that is "not tried by jury because Congress has made admiralty procedures applicable." Brainerd Currie, *The Silver Oar and All That: A Study of the Romero Case*, 27 Chi. L. Rev. 1, 5 & n.17 (1959); *see also* Grant Gilmore & Charles Black Jr., *The Law of Admiralty* § 6-30 p. 304 (1st ed. 1957) ("Jurisdiction" over DOHSA claims "is exclusively in the federal district court in admiralty.").[1]

Another provision of the first Judiciary Act, the so-called "saving to suitors clause," provided that the federal courts' exercise of jurisdiction over maritime actions would "sav[e] to suitors, in all cases, the right of a common-law remedy, where the common law is competent to give it." 1 Stat. 76–77 § 9; *see also* 28 U.S.C. § 1333(1) (as amended) ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of … [a]ny civil case of admiralty or maritime jurisdiction, saving

---

[1] Courts, treatises, and litigants sometimes refer to federal courts' "exclusive" admiralty "jurisdiction" over DOHSA claims. It is important to be clear about the meaning of those terms where they are used. Whether DOHSA claims must be heard on the federal courts' admiralty side versus their law side—the issue in this case—should not be confused with the separate question of whether state courts also have subject matter jurisdiction to hear DOHSA claims.

to suitors in all cases all other remedies to which they are otherwise entitled."). But since 1789, that provision has meant that "*common-law* remedies for maritime cases" are "enforceable in the courts of the States and on the common-law side of the lower federal courts when the diverse citizenship of the parties permitted." *Romero*, 358 U.S. at 362–363 (emphasis added); *see Madruga* v. *Superior Ct. of State of California*, 346 U.S. 556, 560 n.12 (1954) (observing that the 1948 and 1949 amendments to the saving clause's verbiage did not effect a substantive change). If a plaintiff pleads, for example, "a suit for breach of a maritime contract" or a "maritime tort[ ]," then "while [that claim] may be brought in admiralty, [it] may also be pursued in an ordinary civil action … on the law side" of the federal court. *Atl. & Gulf Stevedores, Inc.* v. *Ellerman Lines, Ltd.*, 369 U.S. 355, 359–360 (1962).

Where that option exists for a plaintiff pursuing a common law remedy, Federal Rule of Civil Procedure 9(h) establishes a process for the plaintiff to elect the federal court's admiralty-side or law-side procedures. But Section 1333(1) and the Rules do not allow a suit to be brought at law in federal court on a statutory claim that Congress has designated in admiralty. *See, e.g.*, Currie, *supra*, at 13–14 & n.49 ("Proceedings under [DOHSA] are not within the saving clause" because they are "proceedings in admiralty," so "there is no right to a jury trial."); Grant Gilmore & Charles Black Jr., *The Law of Admiralty* § 1-13 p. 40 & n.133 (2d ed. 1975) ("Gilmore & Black 2d") ("It has been held that a suit under [DOHSA] must be brought on the admiralty side, and may not be brought at law under the 'saving clause.'").

The Supreme Court has explained that, "in the entire history of federal maritime legislation," Congress "has made specific provision" for a jury trial in the rare and

exceptional instances where it has wanted to deviate from the firm rule that new causes of action in admiralty are tried without a jury when in federal court; "Congress has not once left the availability of a trial on the law side to inference." *Romero*, 358 U.S. at 371. In the Great Lakes Act of 1845, for example, Congress provided that, "[i]n any case of admiralty and maritime jurisdiction relating to any matter of contract or tort arising upon or concerning" the Great Lakes, "the trial of all issues of fact shall be by jury if either party demands it." 5 Stat. 726; *see* 28 U.S.C. § 1873. But that provision was recognized as "an anomaly in the maritime law because of its jury trial provision." *Romero*, 358 U.S. at 371.

Members of Congress "thrashed out" the jury trial "question" during legislative debates over DOHSA. *Romero*, 358 U.S. at 371 n.28 (quoting 59 Cong. Rec. 4482, 60th Cong., 2d Sess. (1920)). Congress ultimately "decided [it] best not to incorporate into this bill a jury trial because of the difficulties" of using atypical jury procedures "in admiralty proceedings." *Id.* (citation omitted). But Congress made a different choice two months later when it enacted the Jones Act to provide a cause of action for "any seaman who shall suffer personal injury in the course of his employment" and suffer "death … as a result." 41 Stat. 988, 1007 § 33. Although those actions would nearly always have a maritime character, Congress provided that the seaman's personal representative "may maintain an action for damages at law with the right of trial by jury." *Id.* Federal maritime legislation has thus consistently reflected Congress's deliberate choices about when to authorize a jury trial and when to direct federal courts to rely on their historic non-jury procedure in resolving admiralty claims.

In addition to specifying the form of the DOHSA cause of action ("in admiralty"), DOHSA establishes a "comprehensive" statutory scheme that "provide[s] the exclusive recovery for deaths that occur on the high seas." *Dooley*, 524 U.S. at 123–124. In particular, the Act specifies who may be a plaintiff and what damages are available. "The action shall be for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative." 46 U.S.C. § 30302. For most accidents, DOHSA limits recovery to "a fair compensation for the pecuniary loss sustained by the individuals for whose benefit the suit is sought." § 30303. For commercial aviation accidents beyond 12 nautical miles from the shore of the United States, beneficiaries may also recover "nonpecuniary" damages "for loss of care, comfort, and companionship." § 30307. But "punitive damages" are expressly precluded. *Id.*

"DOHSA also includes a limited survival provision: In situations in which a person injured on the high seas sues for his injuries and then dies prior to completion of the suit, 'the personal representative of the decedent may be substituted as a party and the suit may proceed as a suit under [DOHSA].'" *Dooley*, 524 U.S. at 122 (quoting 46 U.S.C. § 30305). But the Act does not include any other survival provision that would authorize recovery for damages the decedent would have been able to recover if he had survived, such as damages for pre-death pain and suffering. *Id.* at 123.

DOHSA's "[n]onapplication" provision—the Act's original Section 7—specifies that DOHSA (a) "does not affect the law of a State regulating the right to recover for death," and (b) "does not apply to the Great Lakes or waters within the territorial limits of a State." 46 U.S.C. § 30308; *see* 41 Stat. 538 § 7. But the Supreme Court has held that the nonapplication provision "was intended only to serve as a jurisdictional

saving clause, ensuring that state courts enjoyed the right to entertain causes of action and provide wrongful death remedies both for accidents arising on territorial waters and, under DOHSA, for accidents occurring more than one marine league from shore." *Offshore Logistics*, 477 U.S. at 221.

Other sections of DOHSA provide for apportionment of recovery among multiple beneficiaries, 46 U.S.C. § 30303; adopt contributory negligence as a defense while also limiting it, § 30304; and govern actions under foreign law, § 30306.

### B. The Present Controversy

#### 1. The aviation accident and resulting litigation

On October 29, 2018, a Boeing 737 MAX 8 airplane operating as Lion Air flight JT610 took off from Jakarta, Indonesia. Plaintiffs allege that an onboard sensor falsely reported that the plane's angle of attack was too high, causing the Maneuvering Characteristics Augmentation System to push the plane's nose down. About ten minutes into the flight, the airplane crashed into the Java Sea, tragically killing everyone aboard. *See* JA112–JA136, JA154–JA168 (Complaints).

Family members of the decedents and their representatives filed dozens of lawsuits that were eventually consolidated in the district court. The relevant defendants named in Plaintiffs' suits here include various entities of The Boeing Company allegedly involved in manufacturing the aircraft; Rockwell Collins, Inc., the alleged manufacturer of certain flight-control computers; and Rosemount Aerospace, Inc., which allegedly manufactured certain sensors (collectively, the "Manufacturers"). Plaintiffs also named Xtra Aerospace, LLC, which allegedly serviced part of the airplane.

The district court consolidated all of the actions arising from the crash under a master docket number: *In re Lion Air Flight JT 610 Crash*, No. 18-cv-07686. Early in the litigation, Boeing committed to negotiate in good faith to resolve all claims from the accident for full compensatory damages under the applicable law based on the circumstances of each case. D. Ct. Dkt. 137 at 1. With the assistance of a respected mediator—the Honorable Donald O'Connell, former Chief Judge of the Circuit Court of Cook County—the parties have fully settled claims relating to 184 decedents. Plaintiffs' actions here are the only remaining lawsuits.

### 2. The Chandra plaintiffs

The family members of Mr. Chandra originally filed suit in the Circuit Court of Cook County, Illinois, pleading common law claims under Illinois state law. Boeing removed the case to federal court based on MMTJA, 28 U.S.C. § 1369, and the district court's admiralty jurisdiction, 28 U.S.C. § 1333(1). JA8–JA11. After amendments, the Chandra plaintiffs' operative complaint (the Third Amended Complaint) primarily pleaded claims of strict products liability, negligence, and negligent failure to warn. JA166–JA167. The plaintiffs stated that they were pleading their wrongful death claims under DOHSA, the Illinois Wrongful Death Act, "or such other law as the Court determines to be applicable under the circumstances of this case." *E.g.*, JA170.

### 3. The Manfredi plaintiffs

The family members of Mr. Manfredi originally sued in the federal district court. Their operative complaint (the Second Amended Complaint) pleaded claims against the Manufacturers for strict products liability (design defect, manufacturing defect, and failure to warn); negligence; breach of implied warranties (merchantability and

fitness for particular purpose); violations of the federal Computer Fraud and Abuse Act; and survival claims for negligent infliction of emotional distress. D. Ct. Dkt. 1378 ¶¶ 201–444, 489–503. Against the Boeing defendants only, the Manfredi plaintiffs alleged wrongful death and survival claims under the Illinois consumer fraud statute. *Id.* ¶¶ 468–488.

### 4.  The district court's pretrial order

After years of negotiations and the successful settlement of nearly all actions, the Manufacturers moved the district court for a pretrial order that: (i) the DOHSA claim is exclusive for a death on the high seas and preempts (or displaces) all of Plaintiffs' other claims; and (ii) Plaintiffs' DOHSA claims should be tried to the bench rather than a jury. D. Ct. Dkt. 1400.[2]

The district court granted the motion. A1–A21.

Applying Federal Rule of Civil Procedure 12(b)(6), the district court first held that DOHSA provides the exclusive source of recovery for deaths on the high seas and thus preempts all of Plaintiffs' other claims. A6–A15. That conclusion follows, the court explained, from the Supreme Court's multiple decisions holding that DOHSA is a comprehensive statute expressing Congress's considered judgment on what remedies should and should not be available for fatal injuries beyond territorial waters. A10–A12. The district court rejected Plaintiffs' argument that they may supplement Congress's designated remedy with additional claims for pre-death suffering that the decedents allegedly experienced over land in the few minutes before the plane

---

[2] Defendant Xtra Aerospace did not join the Manufacturers' motion.

crashed, reasoning that such claims are inseparable from Plaintiffs' DOHSA claims. A13–A14. And the court also rejected Plaintiffs' attempt to expand DOHSA by seeking recovery for the decedents' personal belongings lost in the Java Sea, explaining that DOHSA authorizes damages for *family members'* losses but does not permit "a survival claim for damages to the estate." A13–A14.

The district court further determined that DOHSA, as "a civil action in admiralty," 46 U.S.C. § 30302, does not entitle Plaintiffs to a jury trial. A15–A19. Plaintiffs had argued that the "saving-to-suitors" clause of 28 U.S.C. § 1333(1) entitles them to a jury trial on their DOHSA claim whenever they can establish a non-admiralty basis for federal subject matter jurisdiction such as diversity. A15–A16. But as the district court explained, Plaintiffs acknowledge that Section 1333(1) has "an exception … for claims that can only be brought in admiralty." A16. And "DOHSA, by its terms, is one of those statutes" where Congress created a claim that must be brought exclusively "in admiralty" when in federal court. A16–A17. Plaintiffs also invoked DOHSA's non-application clause in 46 U.S.C. § 30308(a), but the Supreme Court has held that that clause simply authorizes "concurrent jurisdiction to state courts to adjudicate DOHSA claims"; it does not "allow state law causes of action to be brought in federal court concurrently with DOHSA, or allow Plaintiffs to invoke common law jurisdiction." A17 (citing *Offshore Logistics*, 477 U.S. at 232). The district court also rejected Plaintiffs' suggestion that there is anything incongruous about the possibility that DOHSA claims would be tried to a jury in state court but to the bench in federal court, explaining that such a difference would simply reflect the different procedural rules in state and federal courts. A17–A18. Nor did it make any difference that both Plain-

tiffs and Boeing had demanded a jury in their pleadings, because "[a] jury demand by either party does not convert an admiralty claim into a nonadmiralty claim." A19 (citing *Wingerter* v. *Chester Quarry Co.*, 185 F.3d 657, 668 (7th Cir. 1998)).

Plaintiffs and one defendant (Xtra Aerospace) moved the district court to certify its rulings for interlocutory appeal under Section 1292(b). The court agreed to certify whether Plaintiffs are "entitled to a jury trial under the Seventh Amendment" in federal court where their "sole" remaining claim "arises under DOHSA" and they assert a "concurrent basis for" federal subject-matter jurisdiction. JA212. But the court declined the Chandra plaintiffs' request to certify "whether DOHSA preempts their causes of action for physical destruction of property and personal injuries to the decedent allegedly sustained over land during the flight that ultimately led [to] a fatal crash." *Id*. Plaintiffs' preemption question was "neither controlling nor contestable," the court explained, because Plaintiffs had not adequately pleaded viable claims besides DOHSA and in any event the Supreme Court has answered the question of DOHSA's preemptive scope "in no uncertain terms" in *Dooley*, 524 U.S. at 123, and *Mobil Oil Corp.* v. *Higginbotham*, 436 U.S. 618, 625 (1978). JA212–JA213.

## SUMMARY OF ARGUMENT

The district court's pretrial order should be affirmed.

**I.** The district court correctly determined that Plaintiffs are not entitled to a jury trial on their DOHSA claims. A15–A19. The Federal Rules of Civil Procedure "do not create a right to a jury trial on issues in a claim that is an admiralty or maritime claim," Fed. R. Civ. P. 38(e)—reflecting the federal courts' "historic procedure in admiralty," *Romero*, 358 U.S. at 363. And Congress expressly provided that the statu-

tory DOHSA cause of action is to be heard "in admiralty" when in federal court. 46 U.S.C. § 30302.

**A.** A statutory cause of action "in admiralty" has never guaranteed a jury trial except where Congress specifically provided for one. "[I]n the entire history of federal maritime legislation, … Congress has not once left the availability of a trial on the law side to inference. It has made specific provision." *Romero*, 358 U.S. at 371. Most notably, the Jones Act—DOHSA's companion statute—allows an injured seaman "to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104(a). DOHSA, on the other hand, allows only a "civil action in admiralty." 46 U.S.C. § 30302. The contrast between the two statutes shows that Congress intentionally declined to create a jury trial right for DOHSA claims.

**B.** Plaintiffs argue that DOHSA's "grant of admiralty jurisdiction" is not "exclusive." Manfredi Br. 22–23. But that argument flies in the face of DOHSA's text, which makes clear that DOHSA provides a remedy solely "in admiralty." As a result, when such a claim is heard in federal court, it is heard "in" the "admiralty" side of the court using admiralty procedures—which do not include a jury trial. To interpret the statute any other way would be to indulge precisely the type of inference that *Romero* forbids. The fact that state courts have subject matter jurisdiction to adjudicate DOHSA claims per *Offshore Logistics*, 477 U.S. at 232, does not affect whether DOHSA claims can be heard on the "law" side of the federal courts in contravention of the statute's plain text.

**C.** Plaintiffs contend that the saving-to-suitors clause at 28 U.S.C. § 1333(1) allows them to proceed on the "law" side of the federal courts. But there was no com-

mon law remedy for a death on the high seas to be saved by Section 1333(1). And as Plaintiffs acknowledge, that clause does not apply where Congress has specified that a claim must be brought in admiralty. Congress did just that in DOHSA. The text of the DOHSA cause of action is essentially the same as that of the other admiralty statutes that Plaintiffs concede do not carry a jury trial right.

**D.** Plaintiffs cannot overcome the statutory text with appeals to legislative history or public policy. The Supreme Court has held that DOHSA's text controls, and courts will not "rewrite rules that Congress has affirmatively and specifically enacted." *Dooley*, 524 U.S. at 122 (brackets omitted). In any event, the best reading of DOHSA's legislative history is that Congress specifically considered and rejected the suggestion to guarantee a jury trial for DOHSA actions. *See Romero*, 358 U.S. at 371 n.28.

**II.** The district court also correctly determined that the DOHSA cause of action—which Congress crafted to govern exclusively all claims in connection with a person's death on the high seas—precludes Plaintiffs from asserting their other claims for damages. Indeed, as the district court explained, that question does not even warrant this Court's interlocutory review under Section 1292(b) because it is determined by Supreme Court precedent and is "neither controlling nor contestable." JA212.

**A.** DOHSA does not permit common law claims for pre-death suffering before a fatal airplane crash. As the Supreme Court explained in *Offshore Logistics* and *Dooley*, DOHSA describes the complete universe of available remedies where, as here, "death resulted from a commercial aviation accident occurring on the high seas beyond 12 nautical miles from the shore of the United States," regardless of any other

injuries the decedent allegedly suffered in connection with the same accident. 46 U.S.C. §§ 30302, 30307(b).

**B.** DOHSA also does not permit common law claims for property lost in a fatal airplane crash. Congress specified that DOHSA authorizes compensation only for losses sustained *directly* by a decedent's family member; the Act "does not authorize recovery for the decedent's own losses" such as personal property. *Dooley*, 524 U.S. at 122; *see* 46 U.S.C. §§ 30302, 30303. Plaintiffs may not use claims for lost property as a vehicle to pursue supplemental forms of damages that DOHSA does not allow.

## STANDARD OF REVIEW

The Court reviews *de novo* the district court's interpretation of 46 U.S.C. § 30302, as well as its decision to dismiss Plaintiffs' non-DOHSA claims under Rule 12(b)(6). *See United States* v. *Sanders*, 708 F.3d 976, 992 (7th Cir. 2013) ("Because statutory interpretation presents a question of law, we review *de novo*."); *Kubiak* v. *City of Chicago*, 810 F.3d 476, 480–481 (7th Cir. 2016) ("We review de novo a grant of a motion to dismiss based on Rule 12(b)(6).").

In this interlocutory appeal under Section 1292(b), this Court has discretion to "address any issue fairly included within the [district court's] certified order." *T.S.* v. *County of Cook*, 67 F.4th 884, 890 (7th Cir. 2023). That discretion includes the authority to review only certain issues within the certified order, rather than all of the issues. 16 Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure Jurisdiction* § 3929 (3d ed. Apr. 2023 update).

ARGUMENT

DOHSA's statutory text and the Supreme Court's precedents interpreting it establish that the district court's order should be affirmed.

## I.   The district court correctly determined that the Plaintiffs are not entitled to a jury trial on their DOHSA claims in federal court.

"[F]ederal procedural law controls the question of whether there is a right to a jury trial" in federal court. *Int'l Fin. Servs. Corp.* v. *Chromas Techs. Canada, Inc.*, 356 F.3d 731, 735 (7th Cir. 2004). Since the founding of the Nation, the federal courts' "historic procedure in admiralty" has been to try cases "by a judge without a jury." *Romero*, 358 U.S. at 363. Today the Federal Rules of Civil Procedure incorporate that "long-established, smoothly functioning" tradition, *id.*, by providing that the Rules "do not create a right to a jury trial on issues in a claim that is an admiralty or maritime claim," Fed. R. Civ. P. 38(e); *see In re Complaint of McCarthy Bros./Clark Bridge*, 83 F.3d 821, 826 (7th Cir. 1996) ("Claimants have no right to a jury trial in admiralty actions[.]"); 14A Wright & Miller, *supra* § 3671.4 (4th ed. Apr. 2023 update) ("[B]y virtue of Rule 38(e) there is no right to a jury trial in admiralty cases unless the underlying statute provides for a jury trial."). And Congress expressly provided that DOHSA authorizes only a "civil action in admiralty." 46 U.S.C. § 30302. That is why the Supreme Court decades ago rejected the suggestion that DOHSA "allows a jury trial." *Romero*, 358 U.S. at 371 n.28.

### A.   A statutory cause of action "in admiralty" has never guaranteed a jury trial except where Congress specifically provided.

This Court determines the meaning of DOHSA, like any other statute, by "interpret[ing] the words consistent with their 'ordinary meaning at the time Congress en-

-19-

acted the statute.'" *Wisconsin Central Ltd.* v. *United States*, 138 S. Ct. 2067, 2070 (2018) (citation and ellipsis omitted). In 1920, there would have been no misunderstanding about the effect of Congress's decision to authorize the DOHSA cause of action only "in the district courts of the United States, in admiralty." 41 Stat. 537 § 1; *see* 46 U.S.C. § 30302. "[J]udges, scholars[,] and lawyers alike" were familiar with the federal courts' bright-line division between sitting as courts of admiralty rather than courts of law, and they knew the federal courts' "time-sanctioned mode of trying suits in admiralty without a jury." *Romero*, 358 U.S. at 369; *see* pp. 6–7, *supra*; *see also Miles*, 498 U.S. at 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation.").

As explained by Chief Justice Marshall, "[t]he Constitution" had "contemplat[ed] … three distinct classes of cases"—cases in law, in equity, and in admiralty—and made "discrimination" "between them" in its authorization to Congress to create lower federal courts. *American Ins. Co.* v. *356 Bales of Cotton*, 26 U.S. (1 Pet.) 511, 545 (1828); *see* U.S. CONST. art 1, § 8, cl. 9; *see also Romero*, 358 U.S. at 360–361. In admiralty actions, the federal district courts "sat to enforce the comprehensive federal interest in the law of the sea which had been a major reason for their creation." *Romero*, 358 U.S. at 363. And because the Constitution and the first Judiciary Act empowered the federal courts to "continue the development" of the "substantive" law of admiralty, it made sense that they also authorized admiralty courts to resolve disputed facts without a jury. *Id.* at 361, 363. The Seventh Amendment accordingly

"d[id] not require jury trials in admiralty cases." *Fitzgerald* v. *United States Lines Co.*, 374 U.S. 16, 20 (1963).[3]

In 1920, "common-law remedies" that arose in an admiralty setting "were, under the [saving-to-suitors clause in 28 U.S.C. § 1333(1)], enforceable in the courts of the States and on the common law side of the lower federal courts when the diverse citizenship of the parties permitted." *Romero*, 358 U.S. at 363 (emphasis added). "A suit for breach of a maritime contract," for example, "may be brought in admiralty" and "may also be pursued in an ordinary civil action." *Ellerman Lines*, 369 U.S. at 359–360; *see also Brotherhood Shipping Co.* v. *St. Paul Fire & Marine Ins.*, 985 F.2d 323, 326 (7th Cir. 1993) ("an admiralty plaintiff" alleging maritime negligence "is entitled to pursue *any other remedies* that he might have *as well as* his remedies in admiralty") (emphasis added). But as the original text of the saving clause makes clear, that provision was limited to "the right of a common-law remedy." 1 Stat. 76 § 9. *Compare Leon* v. *Galceran*, 78 U.S. (11 Wall.) 185, 187–188 (1870) ("Mariners in suits to recover their wages" may elect to bring "an action at law" in federal court through the saving clause "because the common law, in such a case, is competent to give [them] a remedy."), *with The Belfast*, 74 U.S. (7 Wall.) 624, 644 (1868) (a claim "to enforce a maritime lien by a proceeding in rem" is not within the saving clause because "there is no [comparable] form of action at common law"). The saving clause has never

---

[3] The Supreme Court in *Fitzgerald* held that a federal court should use a jury to resolve non-statutory admiralty claims that arise from the same facts as other viable claims that do carry the right to a jury trial. 374 U.S. at 20–21. This case does not present that circumstance, as Plaintiffs have no potentially viable claims other than claims under DOHSA. *See* Part II, *infra*.

encompassed statutory remedies designated by Congress in admiralty. *See Red Cross Line* v. *Atlantic Fruit Co.*, 264 U.S. 109, 123–124 (1924) ("The 'right of a common law remedy', so saved to suitors … include[s] all means *other than proceedings in admiralty* which may be employed to enforce the right or to redress the injury involved.") (emphasis added).

In the "anomalous" instance where Congress created a statutory cause of action in admiralty with a right to a jury trial, Congress "made specific provision," as in the Great Lakes Act. *Romero*, 358 U.S. at 371; *see* p. 9, *supra*. The absence of any such specific provision in DOHSA or in the Suits in Admiralty Act, 46 U.S.C. 30901 *et seq.*—which was also passed in 1920 and which similarly authorized an action "in admiralty," 41 Stat. 525–526 § 2—is why the Supreme Court in *Romero* thought it obvious that "[n]either" statute "allows a jury trial in personal injury cases" in federal court. 358 U.S. at 371 n.28.

The contrast between DOHSA and the Jones Act—passed just two months apart as "companion statute[s]," *Miles*, 498 U.S. at 29—confirms that DOHSA does not confer the right to a jury trial on claims heard in federal court. Congress in the Jones Act departed from the consistent history of admiralty procedures by specifically authorizing "a civil action at law" with "the right of trial by jury" for seamen killed during their employment. 46 U.S.C. § 30104(a) ("A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action *at law, with the right of trial by jury*, against the employer.") (emphasis added). The overall similarity between the statutes—both maritime wrongful death actions—makes the conclusion from that textual difference

overwhelming. *See Wisconsin Central*, 138 S. Ct. at 2071–2072 (finding that Congress meant different things when it used different words in companion statutes).

In light of that history and context, it is no surprise that the vast majority of courts to have considered the question agree with the district court's conclusion here: DOHSA does not carry the right to a jury trial in federal court. *See Tallentire* v. *Offshore Logistics, Inc.*, 800 F.2d 1390, 1391 (5th Cir. 1986) ("[Plaintiff's] action under DOHSA is cognizable only in admiralty and she is not entitled to a jury trial."); *Curry* v. *Chevron, USA*, 779 F.2d 272, 274 n.1 (5th Cir. 1985) ("DOHSA actions are brought in admiralty and as such no trial by jury may be had."); *LaCourse* v. *Def. Support Servs. LLC*, No. 16-cv-170, 2018 WL 7342153, at *2 (N.D. Fla. Oct. 31, 2018); *Varner* v. *Celebration Cruise Line, LLC*, No. 15-cv-60867, 2015 WL 12868132, at *3 (S.D. Fla. Sept. 15, 2015); *Lasky* v. *Royal Caribbean Cruises, Ltd.*, 850 F. Supp. 2d 1309, 1314–1315 (S.D. Fla. 2012); *Reistetter* v. *Royal Caribbean Cruises Ltd.*, No. 08-cv-20462, 2008 WL 5397139, at *1 n.2 (S.D. Fla. Dec. 18, 2008); *Modica* v. *Hill*, No. 96-cv-1121, 1999 WL 52153, at *2 (E.D. La. Jan. 29, 1999); *In re Air Disaster Near Honolulu, Hawaii on Feb. 24, 1989*, 792 F. Supp. 1541, 1547 (N.D. Cal. 1990); *Friedman* v. *Mitsubishi Aircraft Int'l, Inc.*, 678 F. Supp. 1064, 1065–1066 (S.D.N.Y. 1988); *Favaloro* v. *S/S Golden Gate*, 687 F. Supp. 475, 481 (N.D. Cal. 1987); *Heath* v. *Am. Sail Training Ass'n*, 644 F. Supp. 1459, 1471 (D.R.I. 1986). The district court's inter-

pretation of DOHSA has the support of more than a dozen other courts over multiple decades.[4]

**B.  Plaintiffs' contrary arguments are unavailing.**

None of the arguments advanced by Plaintiffs or their amici shows any error in the district court's reasoning.

### 1.  The DOHSA cause of action is not affected by other federal jurisdictional statutes or state courts' jurisdiction.

Plaintiffs principally contend (Manfredi Br. 23) that "DOHSA admiralty jurisdiction cannot be exclusive because [the Act] grants concurrent jurisdiction to non-admiralty courts"—namely state courts. That argument is flawed in multiple respects.

### a.  Congress assigned the DOHSA cause of action to courts "in admiralty."

To begin, Plaintiffs' argument flies in the face of DOHSA's text. DOHSA created a new substantive right—a federal civil cause of action—and provides that it shall be heard "in admiralty." 46 U.S.C. § 30302. By designating the DOHSA cause of action "in admiralty," Congress specified an important limitation on the right that it created: when DOHSA is the sole claim and that claim is in federal court, it must be heard "in" the federal court's distinctive "admiralty" side using the court's admiralty procedures—not on its law side. *See* pp. 5–7, *supra*.

---

[4] The Manfredi brief wisely declines to cite the two district court cases that Plaintiffs relied on below, both of which have been abrogated by subsequent Supreme Court precedent. *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 704 F. Supp. 1135, 1155 (D.D.C. 1988) (incorrectly holding before *Offshore Logistics* that "state survival statutes survive DOHSA's preemptive force"), *vacated in part on other grounds*, 932 F.2d 1475 (D.C. Cir. 1991); *Tozer* v. *LTV Corp.*, No. HM81-2134, 1983 WL 705, at *7 (D. Md. May 27, 1983) (relying on general maritime authorities before *Dooley*).

Plaintiffs say (Manfredi Br. 22) that "[a] law granting one sort of jurisdiction does not implicitly negate others," quoting *Lu Junhong* v. *Boeing Co.*, 792 F.3d 805, 818 (7th Cir. 2015). But that general principle does not apply to a federal cause of action *in admiralty* in light of the history of distinctive federal-court admiralty proceedings. The Supreme Court has explained that, "in the entire history of federal maritime legislation, … Congress has not once left the availability of a trial on the law side to inference. It has made specific provision." *Romero*, 358 U.S. at 371. DOHSA makes no "specific provision" for a trial on the law side. Yet Plaintiffs and their amici would have this Court draw the very inference that the Supreme Court in *Romero* has forbidden as inconsistent with the whole history of federal maritime legislation.

Congress's creation of a DOHSA cause of action to be heard exclusively "in admiralty" explains why none of Plaintiffs' arguments claiming the right to a jury trial is persuasive. For one, it is irrelevant to the question presented here that Plaintiffs can satisfy the requirements for federal subject matter jurisdiction under 28 U.S.C. §§ 1332 and 1369. *See* Manfredi Br. 22–23, 38–43. There is no dispute in this appeal that the federal district court had subject matter jurisdiction over Plaintiffs' DOHSA claims. But the issue here is different: when a federal court hears solely a DOHSA action, must the court hear the action in admiralty or may it sit in law? The text of DOHSA makes the answer perfectly clear: the court must hear the action "in admiralty."[5]

_____

[5] Plaintiffs are wrong to assert that Boeing "explicit[ly] recogni[zed] that the district court had law-side jurisdiction" when it "argued in its Notice of Removal (at 3-5) that the district court had jurisdiction under [Section] 1369." Manfredi Br. 39 & n.7. At

Section 30302's provision that the DOHSA cause of action shall be heard "in admiralty" also provides a complete answer to Plaintiffs' argument (Manfredi Br. 43–44) that they did not "designate" their DOHSA claim "as an admiralty or maritime claim" under Federal Rule of Civil Procedure 9(h)(1). The current text of that rule reflects the 1966 merger of law and admiralty, but "it [wa]s no purpose of unification [of law and admiralty] to inject a right to jury trial into those admiralty cases in which that right is not provided by statute." Fed. R. Civ. P. 9 advisory committee's note to 1966 amendment. The Rule accordingly provides that "[a] claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim" for purposes of Rule 38(e), "whether or not so designated." Fed. R. Civ. P. 9(h)(1). Congress's specification that the DOHSA action is "in admiralty" is exactly the sort of statutory text that makes that claim "cognizable only in the admiralty or maritime jurisdiction," *id.*, so the absence of a designation is irrelevant.

A DOHSA action's admiralty character also explains why Plaintiffs may not invoke the Seventh Amendment to obtain a jury trial. *Contra* Manfredi Br. 44–47. As the Supreme Court has held and Plaintiffs themselves acknowledge, "[t]he Seventh Amendment guarantees the right to a jury trial" only "in an *action at law*." Manfredi Br. 44 (emphasis added); *see Fitzgerald*, 347 U.S. at 20. DOHSA is not an action at law; it is an "action in admiralty" because Congress specifically designated it as such.

_____

the time of Boeing's notice of removal, the Chandra Plaintiffs had asserted multiple non-DOHSA causes of action. *See* p. 12, *supra*. Boeing lawfully removed the case because the federal court had subject matter jurisdiction to adjudicate those claims under MMTJA, *see* p. 3, *supra*, even though the claims fail on the merits because they are preempted by DOHSA, *see* Part II, *infra*.

46 U.S.C. § 30302. As Plaintiffs' own authority explains (Manfredi Br. 45), federal law in 1920 had long recognized a "contradistinction" between "legal rights," "equitable rights," and "admiralty rights." *City of Monterey* v. *Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 708 (1999) (quoting *Parsons* v. *Bedford*, 28 U.S. (3 Pet.) 433, 447 (1830) (Story, J.)); *see also Romero*, 358 U.S. at 364–365. The Seventh Amendment has no bearing on the last of those.[6]

### b. State courts' jurisdiction is irrelevant.

The remainder of Plaintiffs' primary argument (Manfredi Br. 23–26)—that DOHSA does not confer "exclusive" admiralty jurisdiction because it grants state courts concurrent subject matter jurisdiction over DOHSA claims—confuses two distinct and entirely unrelated questions. The first is whether DOHSA's nonapplication clause (the original Section 7), which provides that DOHSA "does not affect the law of a State regulating the right to recover for death," 46 U.S.C. § 30308, preserves concurrent state court jurisdiction to hear DOHSA actions. In *Offshore Logistics*, the Supreme Court held that it does. *See* 477 U.S. at 232.

But that has no bearing at all on the second question, the one presented here: whether DOHSA claims in *federal court* must be heard in admiralty. As Plaintiffs admit (Manfredi Br. 25), "DOHSA § 7 refers only to state courts." And as this Court has previously observed, "whether" Plaintiffs have "a right to a jury trial" in federal

---

[6] One amicus (the American Association for Justice) argues that DOHSA violates the Seventh Amendment if claims arising under it do not carry the right to a jury trial. But the Supreme Court has held that the Seventh Amendment does not apply to claims "customarily heard by courts of equity or admiralty." *Feltner* v. *Columbia Pictures Television, Inc.*, 523 U.S. 340, 348 (1998).

court is "control[led]" by "federal procedural law." *International Financial Services*, 356 F.3d at 735. Here the relevant procedural law is DOHSA's text at the time of enactment and the Federal Rules of Civil Procedure. And as described above, the plain text of those sources resolves the jury-trial issue conclusively by establishing that the civil action created by DOHSA must be heard "in admiralty"—a form of action that Rules 9(h)(1) and 38(e) specify does not carry the right to a jury trial. Plaintiffs and their amici do not cite a single example of a case looking to state courts' subject matter jurisdiction to determine whether a claim requires a jury trial in federal court. That stands to reason, because when it comes to the law-side jurisdiction of federal courts over claims under federal maritime statutes, there is nothing like the "traditionally exercised concurrent jurisdiction of the state courts in admiralty matters." *Romero*, 358 U.S. at 372.

Plaintiffs observe (Manfredi Br. 25) that *Offshore Logistics* stated that "state *and federal courts* exercising jurisdiction under the 'saving to suitors' clause over *maritime claims* for deaths on the high seas were obliged to apply governing federal substantive law in resolving those claims to the extent state common law remedies conflicted with governing federal maritime law." 477 U.S. at 227 (emphases added). But the Court's point in that paragraph was merely that "federal substantive law" is supreme, and DOHSA "did not implicitly sanction the operation of state wrongful death statutes on the high seas." *Id.* Plaintiffs' quoted sentence about "state and federal courts exercising jurisdiction under" the saving clause clarified that, if a plaintiff attempted to plead a *maritime law* claim for wrongful death on the high seas, then the federal court would have subject matter jurisdiction over that claim under the

saving clause, but the claim would fail on the merits because federal substantive law controlled and it provided no remedy for wrongful death other than DOHSA.

## 2. The saving-to-suitors clause of Section 1333(1) does not apply to statutory causes of action that Congress designated in admiralty.

Plaintiffs and their amici also attempt to rely on the saving-to-suitors clause in Section 1333(1). But that provision does not suggest that Plaintiffs are entitled to a jury trial for their DOHSA action "in admiralty."

As the Supreme Court explained in *Romero*, the saving-to-suitors clause establishes that "*common-law remedies* for maritime causes" can be heard by federal courts on their law side "when the proper diversity of parties" provides an alternative basis for subject matter jurisdiction. 358 U.S. at 362 (emphasis added). The original language of the saving-to-suitors clause makes it even more explicit that the clause is relevant only where (unlike here) the plaintiff asserts "the right of a common-law remedy, where the common law is competent to give it." 1 Stat. 76–77 § 9. And the twentieth century modification to the verbiage of the saving clause did not enact any substantive change. *See Madruga*, 346 U.S. at 560 n.12.

The option to bring a common law claim arising in a maritime context "on the law side" of the federal court is not available to Plaintiffs here, because the DOHSA wrongful death action is not a remedy that existed at common law. The saving-to-suitors clause means that, if a plaintiff could have pursued his remedy at common law (such as a claim for tort or breach of contract), then the fact that the claim arises in a maritime setting does not require that claim to be heard on the court's admiralty side rather than the law side. *See Ghotra* v. *Bandila Shipping, Inc.*, 113 F.3d 1050,

1055 (9th Cir. 1997) ("[T]he proper focus" for the saving clause "is on whether the suit could have been brought at 'common law,' that is, … whether this was the type of claim that historically could be brought in state court or on the law side of the district court."). But again, that pre-condition does not apply to Plaintiffs' claims here, because a claim for wrongful death on the high seas is a statutory claim in admiralty; there is no law-side common law version of a claim for wrongful death on the high seas to be "saved" by Section 1333(1). *See Dooley*, 524 U.S. at 121; *see also Panama Refining Co.* v. *Vasquez*, 271 U.S. 557, 561 (1926) ("[T]he saving clause does not include … forms of proceeding unknown to the common law.").

The saving clause does not apply here for an additional reason. As the leading admiralty treatise explains, the principle invoked by Plaintiffs and their amici—that "[w]here the suit is *in personam*, it may be brought *either* in federal court under the admiralty jurisdiction … *or*, under the saving clause, in an appropriate non-maritime court, by ordinary civil action"—is subject to the "very important caution" that the principle merely "deal[s] *generally* with admiralty cases" and "is a correct picture only for cases *not otherwise provided for by statute*." Gilmore & Black 2d, *supra*, § 1-13 p. 40 (second emphasis added). Gilmore & Black even identify DOHSA as the key example where Congress has provided otherwise by statute. *Id.* § 1-13 p. 40 n.133.

Plaintiffs themselves acknowledge that Section 1333(1) does not apply where Congress has designated that a particular remedy must be brought exclusively in admiralty. *See* Manfredi Br. 3, 8–10, 25, 41. That is exactly what Congress did when it enacted DOHSA, a statutory cause of action "in admiralty." 46 U.S.C. § 30302. Plaintiffs observe (Manfredi Br. 9–10) that some scholars have not listed DOHSA

alongside the other statutes that must be heard in admiralty when in federal district courts. But other scholars—including no less than Brainerd Currie and the twentieth century's most famous admiralty treatise—*do* include DOHSA on that list. *See Currie*, *supra*, at 13–14 & n.49; Gilmore & Black 2d, *supra*, § 1-13 p. 40 n.133; Mark Thomas Mahfouz, *Whose Interests Are More Important: Should A Plaintiff's Rule 9(h) Designation "Trump" A Counterclaimant's Right to Jury Trial?*, 27 Tul. Mar. L.J. 277, 277–278 (2002); Lily Kurland, *A Trying Balance: Determining the Trier of Fact in Hybrid Admiralty-Civil Cases*, 90 Wash. U.L. Rev. 1293, 1320 n.41 (2013). And of course, the question is not controlled by totaling up the weight of scholarly opinion but by the statutory text and legal precedent—which are clear on the point.

The *Romero* Court found DOHSA materially identical to the Suits in Admiralty Act—one of the causes of action that Plaintiffs and their amici concede cannot be asserted on the "law side" of a federal court because Congress designated it to be heard exclusively in admiralty. *See* 358 U.S. at 371 n.28. Both statutes were passed in 1920 and both authorize actions "in admiralty." *See* 46 U.S.C. §§ 30302; 30903; *see also* p. 22, *supra*.[7] The Ship Mortgage Act of 1920—also enacted the same year—is yet another action that Plaintiffs concede must be brought in admiralty rather than on the law side. *See* Manfredi Br. 10, 24. That provision too authorizes a "civil action in personam in admiralty" against a mortgagor who failed to comply with certain provisions of the statue. 46 U.S.C. § 31325; *see* 41 Stat. 988 (1920). And notably, fed-

---

[7] Congress subsequently amended the Suits in Admiralty Act in 1960 to expressly provide that the claim must be "tried without a jury." 46 U.S.C. § 30903; *see* 74 Stat. 912 § 3.

eral courts' jurisdiction to hear that action originally was expressly "not to the exclusion of" state courts—the same as with DOHSA per *Offshore Logistics*. 41 Stat. 988, 1003 § 30(J)(c). Plaintiffs' law-professor amici contend (at 16) that those other statutes "are distinctively within the special expertise of admiralty courts." But it is the statutory *text* that controls, not intuitions about relative expertise. And Plaintiffs and their amici have not explained how to read the text of those other provision to create causes of action that can be heard exclusively in admiralty while reading the nearly identical and contemporaneous language in DOHSA not to create such a cause of action.

Nor can Plaintiffs explain the textual contrast between DOHSA and the Jones Act, passed just two months later. *See* pp. 22–23, *supra*. Plaintiffs and their amici make no serious attempt to explain why Congress would have expressly provided that a Jones Act claim can be brought at law and tried to a jury if, as they claim, that were the default for statutorily created admiralty claims even absent such specification.

The law professor amici respond (at 19–21) that the word "may" in both DOHSA and the Jones Act suggests that both confer the right to a jury trial. That is plainly incorrect. The word "may" simply reflects the obvious fact that both causes of action are permissive with respect to whether they are asserted at all. A family member of a person who died on the high seas "may" bring the DOHSA claim but is never required to do so. But the text is also quite clear that, *if* the plaintiff elects to bring the cause of action, then it must be heard "in admiralty" when in federal court.

### 3. Plaintiffs cannot overcome the statutory text with appeals to legislative history or public policy.

Plaintiffs fall back to arguments based on legislative history and public policy. Neither provides a basis for deviating from the clear statutory text.

In an effort to show that DOHSA guarantees the right to a jury trial, Plaintiffs rely on arguments from "dicta in a footnote" in *Moragne,* 398 U.S. at 400 n.14, describing DOHSA's legislative history. JA210. Even if that footnote actually supported Plaintiffs' position, "substituting legislative history for legislation has become a disfavored method of statutory interpretation." *Benion* v. *Bank One, Dayton, N.A.*, 144 F.3d 1056, 1059 (7th Cir. 1998). And Plaintiffs' reliance on legislative history is especially unsuitable here, where the Supreme Court has been clear since *Moragne* that DOHSA's text controls, and courts will not "rewrite rules that Congress has affirmatively and specifically enacted." *Dooley*, 524 U.S. at 122 (brackets omitted).

In any event, as the Supreme Court explained in *Romero*, the best reading of DOHSA's legislative history is that the "question" of a jury trial for DOHSA claims "was thrashed out and it was decided best not to incorporate into this bill a jury trial." 358 U.S. at 371 n.28 (quoting 59 Cong. Rec. 4482 60th Cong., 2d Sess. (1920)). Congress's reason was simple: In 1920, juries were virtually unknown to courts sitting in admiralty, save for the anomaly of the Great Lakes Act. *See* 59 Cong. Rec. 4482, 4485 60th Cong., 2d Sess. (1920).

The Supreme Court's footnote in *Moragne* said merely that the Court was unable to draw any definitive conclusions from DOHSA's legislative history about a congressional intent to foreclose wrongful death claims *not* on the high seas. The central issue

in *Moragne* was whether an action "lie[s] under general maritime law for death caused by violation of maritime duties" in state territorial waters. 398 U.S. at 409. The Court held that it does, overruling its contrary decision in *The Harrisburg*, 119 U.S. 199 (1886). In so holding, the Court explained that DOHSA does not preclude general maritime actions for deaths in state territorial waters because DOHSA applies only to deaths on the high seas. *Moragne*, 398 U.S. at 393–403. Elaborating on that point, the Court observed in a footnote that one might draw "an inference that Congress meant to forbid nonstatutory maritime actions for wrongful death" in territorial waters if DOHSA's legislative history had indicated "that Congress imposed exclusive jurisdiction because of a desire to avoid the presentation of wrongful-death claims to juries." *Id.* at 400 n.14. But the Court could "derive no expression of policy" from the "discussion of exclusive jurisdiction in [DOHSA's] legislative history," which was marked by confusion, errors, and an acknowledgement by one legislator that he "[did] not know much about admiralty practice." *Id.* The Court thus found nothing in DOHSA's legislative history to suggest that Congress intended to disallow maritime wrongful death actions in state territorial waters. *Id.*

Plaintiffs contend (Manfredi Br. 18) that the Supreme Court in *Moragne* "disapproved of the 'erroneous view' that admiralty jurisdiction under DOHSA is exclusive." But that description of *Moragne* is wrong: the Court appeared to *accept* the argument that "Congress imposed exclusive jurisdiction" in admiralty for DOHSA actions. 398 U.S. at 400 n.14. What the Court rejected was the notion that DOHSA's legislative history supported the "inference that Congress meant to forbid *nonstatutory* maritime actions for wrongful death, which might come before state or federal juries." *Id.*

(emphasis added). Plaintiffs here are asserting a claim under DOHSA, not a nonstatutory maritime action. If anything, then, *Moragne*'s footnote supports the district court's holding that DOHSA requires a federal court to hear the cause of action in its admiralty procedure.

Plaintiffs' appeals to public policy are similarly unavailing. They say (Manfredi Br. 47) that, if their DOHSA claims "had been tried in state court," then they "would have been entitled to a jury." But insofar as that might be true under Illinois law, it simply reflects differences between state and federal rules of civil procedure. And contrary to Plaintiffs' assertion (Manfredi Br. 47), there is nothing "unjust" about the fact that a DOHSA claim removed to federal court under 28 U.S.C. § 1441 will be heard without a jury. When a cause of action is heard in federal court—whether originally filed there or lawfully removed there—"[f]ederal procedural law controls" whether a jury is used, even if the cause of action does not arise under federal law (as it does here). *International Financial Services*, 356 F.3d at 735. As explained above, Rule 38(e) specifies that no jury is required for a DOHSA claim.

Last, Plaintiffs contend (Manfredi Br. 47–49) that "[t]here is no policy reason justifying" a DOHSA claim being heard without a jury when "juries have heard countless other airline disaster cases." But Plaintiffs' assertions about the best way to resolve modern aviation-accident claims do not control this issue; the text of DOHSA does. The text shows that Congress in 1920 saw value in allowing federal courts to continue "to enforce the comprehensive federal interest in the law of the sea." *Romero*, 358 U.S. at 363. And Congress was fully comfortable with those courts' long-established tradi-

tion of hearing claims in admiralty without a jury, even if similar tort claims arising on land would be heard at law. *Id.*

*    *    *

In sum, DOHSA's text is dispositive. By creating a statutory "civil action in admiralty," Congress instructed the district court to hear Plaintiffs' DOHSA claims using their historic admiralty procedures, which did not involve a jury.

## II. The district court correctly determined that DOHSA is the exclusive source of recovery in connection with a death on the high seas.

The district court also correctly rejected Plaintiffs' attempts to circumvent Congress's deliberate limitations on the damages available when a person dies on the high seas. A11–A15. This Court should not disturb that ruling. Indeed, there is no reason for this Court to reach the issue at all in this interlocutory appeal because it does not meet the standard under Section 1292(b).

### A. The district court adhered to DOHSA's text.

When Congress created DOHSA for the benefit of family members of persons who died on the high seas, it intentionally circumscribed the available remedies. *See Dooley*, 524 U.S. at 122. Recovery under DOHSA is limited to "a fair compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought." 46 U.S.C. § 30303; *see id.* § 30302 ("The action shall be for the exclusive benefit of the decedent's [family members]."). Congress "d[id] not authorize recovery for the decedent's own losses." *Dooley*, 524 U.S. at 122. In cases arising from certain commercial aviation accidents like this one, the plaintiffs may also pursue "nonpecuniary damages," but "punitive damages" are expressly "not recoverable." 46 U.S.C. § 30307(b).

Notwithstanding those clear limitations, Plaintiffs below pleaded non-DOHSA causes of action in an attempt to seek additional damages—including the punitive damages that DOHSA expressly bars. JA151; *see, e.g.*, D. Ct. Dkt. 1378 ¶¶ 231, 248, 267, 280, 292, 311, 353, 370, 389, 402, 414, 433, 444, 488. Most relevant here, the Chandra plaintiffs claimed they were entitled to recover for pain and suffering that their loved one allegedly experienced in the few minutes that the plane traveled over land, and to recover the value of Mr. Chandra's property that was destroyed in the crash. D. Ct. Dkt. 1422 at 4–9.[8]

The district court dismissed all of those claims as foreclosed by DOHSA. A11–A15. The court applied the Supreme Court's holdings that, where a decedent died in an airplane crash on the high seas, DOHSA provides the "exclusive source" of recovery, preempting other claims under both state law and general maritime law. A11–A12 (citing *Offshore Logistics*, 477 U.S. at 207, and *Dooley*, 524 U.S. at 124). And the court rejected Plaintiffs' request to certify that holding for interlocutory appeal, finding its decision "neither controlling nor contestable." JA212.

## B. Plaintiffs' pre-death injury and property damage claims are preempted by DOHSA.

This Court has discretion to decline to consider Plaintiffs' preemption arguments that do not meet the standard for an interlocutory appeal. The Court "may"—but need not—"address any issue fairly included within the certified order." *T.S.*, 67 F.4th at

---

[8] Plaintiffs also pleaded other claims that they do not attempt to revive in this Court. They pleaded wrongful death claims under Illinois law that they now concede are preempted by DOHSA. *See* A3–A4; Chandra Br. 13. And the Manfredi complaint included far-fetched claims under the federal Computer Fraud and Abuse Act and the Illinois consumer fraud statute. D. Ct. Dkt. 1378 ¶¶ 468–503; *see* A13–A15.

890; *see Ingram* v. *Wayne County*, No. 22-1262, 2023 WL 5622914, at *7 (6th Cir. Aug. 31, 2023) (declining to "review other legal questions" not certified for interlocutory appeal and stating that "just because we can does not mean we should"); *Drummond Co., Inc.* v. *Conrad & Scherer, LLP*, 885 F.3d 1324, 1328 (11th Cir. 2018) (finding "interlocutory review appropriate to address only one aspect of the district court's order"). This Court should exercise that discretion here because Plaintiffs' preemption arguments are neither controlling nor contestable for the reasons explained by the district court: the Supreme Court has already addressed DOHSA's preemptive scope more than once and "in no uncertain terms." JA213.

If this Court does review the district court's preemption ruling, then it should affirm. Plaintiffs may not supplement Congress's carefully crafted DOHSA remedies with survival claims for alleged lost property or emotional distress alleged to have been experienced over land just minutes before a fatal crash on the high seas.

### 1. DOHSA's text and Supreme Court precedent establish that DOHSA's remedies are exclusive.

Before DOHSA, the general maritime law would not have authorized recovery for these Plaintiffs for the death of their loved ones on the high seas. *See* pp. 4–5, *supra*. DOHSA provided a potential remedy, but it also established a comprehensive set of rules to govern all aspects of recovery for death on the high seas. Among other things, DOHSA creates the cause of action in admiralty, 46 U.S.C. § 30302; limits the potential beneficiaries of the action and dictates how the recovery will be apportioned between them, *id.*; specifies the types of damages available, §§ 30303, 30307; includes a limited survival provision, § 30305; bars contributory negligence as a complete

defense, § 30304; and allows for actions under foreign law, § 30306. As particularly relevant here, DOHSA specifies the recovery available for commercial aviation accidents on the high seas: "In an action under this chapter, if the death resulted from a commercial aviation accident occurring on the high seas beyond 12 nautical miles from the shore of the United States, additional compensation is recoverable for non-pecuniary damages, but punitive damages are not recoverable." § 30307. "The comprehensive scope" of the statutory text shows that Congress left no room for additional claims based on other theories of liability. *Dooley*, 524 U.S. at 123–124.

The Supreme Court has long held that DOHSA's remedies are exclusive. In *Mobil Oil Corp.* v. *Higginbotham*, 436 U.S. 618 (1978), the Court held that DOHSA plaintiffs may not supplement their recovery with damages for loss of society under general maritime law. *Id.* at 618. While the Court perceived "valid arguments both for and against allowing recovery for loss of society," it would not weigh those arguments because Congress had already "struck the balance" with DOHSA by "limit[ing] survivors to recovery of their pecuniary losses." *Id.* at 623. When DOHSA "speak[s] directly to a question," the Court explained, "courts are not free to 'supplement' Congress' answer so thoroughly that the Act becomes meaningless." *Id.* at 625. In an "area covered by the statute, it would be no more appropriate to prescribe a different measure of damages than to prescribe a different statute of limitations, or a different class of beneficiaries." *Id.*

DOHSA also preempts all state law claims arising in connection with a death on the high seas, as the Supreme Court held in *Offshore Logistics*. *See* 477 U.S. at 232 ("the conclusion that the state statutes are pre-empted by DOHSA where it applies

-39-

is inevitable"). The Court explained that preemption furthers DOHSA's central aims to both "remedy the void that existed in maritime law … and to achieve *uniformity* in the provision of such a remedy." *Id.* at 230 (emphasis added; quotation marks and alterations omitted). Congress did not intend "to preserve intact largely nonexistent or ineffective state law remedies" for high-seas fatalities, or "to allow widely divergent state law wrongful death statutes to be applied on the high seas." *Id.*

Most recently, the Supreme Court in *Dooley* held unambiguously that DOHSA preempts all survival claims under general maritime law. The plaintiffs in that case had argued that, because DOHSA does not authorize recovery for a decedent's pre-death pain and suffering, they were entitled to recover such damages through a maritime survival action. The Court disagreed, holding that plaintiffs may not expand the class of potential beneficiaries or the categories of damages recoverable for a death on the high seas. *Dooley*, 524 U.S. at 123. "By authorizing only certain surviving relatives to recover damages, and by limiting damages to the pecuniary losses sustained by those relatives, Congress provided the exclusive recovery for deaths that occur on the high seas." *Id.* To recognize a survival action in connection with a death on the high seas would "expand the recoverable damages" beyond the specific limitations that Congress established. As the Court explained, "Congress did not limit DOHSA beneficiaries to recovery of their pecuniary losses in order to encourage the creation of nonpecuniary supplements." *Id.* (quoting *Higginbotham*, 436 U.S. at 625).

In light of that precedent, the courts of appeals have consistently held that DOHSA provides the exclusive remedy for all high-seas fatalities. The Eleventh Circuit, for example, held that DOHSA provides the exclusive recovery for a death on

the high seas and preempts all other claims even where the allegedly negligent acts that caused the death occurred on land. *See LaCourse* v. *PAE Worldwide Inc.*, 980 F.3d 1350, 1355–1356, 1358 (11th Cir. 2020); *see also, e.g.*, *Jacobs* v. *N. King Shipping Co.*, 180 F.3d 713, 717 (5th Cir. 1999) (state survival statutes may not supplement the congressionally authorized wrongful death remedy in DOHSA). A leading treatise agrees: "When applicable, the Death on the High Seas Act serves as the exclusive source of damages for the plaintiff in an action under the statute, which has the effect of precluding any extension of remedies under state or general maritime law." 14A Wright & Miller, *supra*, § 3679.

Plaintiffs' contention that they may supplement DOHSA's remedies with additional causes of action cannot be squared with the statutory text or the Supreme Court's decisions interpreting it.

### 2. DOHSA does not permit common law claims for pre-death suffering before a fatal airplane crash.

Plaintiffs contend (Chandra Br. 11–17) that DOHSA applies only "to deaths on the high seas, not to injuries [alleged] over land." *Id.* at 14. But the Supreme Court has made clear that, whenever "DOHSA applies" because "'the accidental deaths occurred beyond a marine league from shore,'" DOHSA "preempts *all other* wrongful-death claims under state or general maritime law" arising in connection with the same accident. *LaCourse*, 980 F.3d at 1356, 1358 (quoting *Offshore Logistics*, 477 U.S. at 218) (emphasis altered); *see Dooley*, 524 U.S. at 123.

DOHSA supplies the exclusive path to recovery here because "the death of an individual [was] caused by [a] wrongful act"—the crash—"occurring on the high seas

beyond 3 nautical miles from the shore of the United States." 46 U.S.C. § 30302. Moreover, "the death [at issue] resulted from a commercial aviation accident occurring on the high seas beyond 12 nautical miles from the shore of the United States." 46 U.S.C. § 30307(b). And because those provisions are triggered, they specify which family members may bring suit and what specific remedies those family members may and may not claim. Plaintiffs argue (Chandra Br. 13) that DOHSA is "silen[t]" about "injuries and pre-death terror suffered by a passenger over land." But that is incorrect: DOHSA provides that, if the decedents died in an accident on the high seas (as here), then only particular remedies are available for the chain of events leading to that death, regardless of any other injuries that the decedents allegedly experienced in connection with the same accident. *See LaCourse*, 980 F.3d at 1358.

The overlap between the liability that DOHSA permits and the theories that Plaintiffs seek to assert outside of DOHSA reinforces why those alternative theories conflict with Congress's plan. For an accident like this one, DOHSA allows plaintiffs to recover particular kinds of damages against "the person or vessel responsible" (allegedly the Manufacturers) for having committed wrongful acts (principally an allegedly defective design) that caused a death on the high seas. 46 U.S.C. § 30302; *see id.* §§ 30303, 30307. Plaintiffs now seek to supplement those remedies by pursuing additional damages against the *same* allegedly responsible parties (the Manufacturers) for the *same* allegedly wrongful acts (the defective design leading directly to the crash). Plaintiffs thus seek to use the same arguments and evidence to obtain damages that DOHSA does not allow.

-42-

Plaintiffs assert (Chandra Br. 11–12) that they are entitled to bring their pre-death suffering claims notwithstanding *Dooley* because that case involved "a Korean Airlines aircraft [shot down] over the Sea of Japan," without an allegation that the passengers experienced "pre-death terror over land." But that attempt to focus on the particular facts in *Dooley* ignores the Supreme Court's explanation of how DOHSA operates. Here, just as in *Dooley*, recognizing Plaintiffs' survival action for pre-death suffering would "expand the recoverable damages" beyond those that Congress permitted. 524 U.S. at 123. Congress's choice to limit DOHSA beneficiaries to recovery for certain enumerated "losses" is fundamentally inconsistent with Plaintiffs' attempt to create additional "nonpecuniary supplements" for pre-death suffering. *Id.*

Plaintiffs do not identify any court that has authorized a DOHSA plaintiff to recover damages for the overland portion of a flight that resulted in death on the high seas. Their cited cases (Chandra Br. 14–16) each involved persons who did not die on the high seas—unlike the decedents here.

Plaintiffs observe (Chandra Br. 14) that the Supreme Court in *Rodrigue* v. *Aetna Casualty & Surety Co.*, 395 U.S. 352 (1969), held that DOHSA does not govern fatal accidents on artificial islands on the Outer Continental Shelf. *Id.* at 359. But the critical point in *Rodrigue* was that the plaintiffs' decedents did not die *on the high seas* as required for a DOHSA action—they died on artificial islands that the Court treated effectively the same as natural islands as a matter of law. *Id.* at 352–354; *see id.* at 359–361 (DOHSA inapplicable because the decedents died not on the sea but on "islands, albeit artificial ones"). Here, by contrast, Plaintiffs' decedents indisputably did die on the high seas, so DOHSA controls and specifies the available recovery.

*Fojtasek* v. *NCL (Bahamas) Ltd.*, 613 F. Supp. 2d 1351 (S.D. Fla. 2009) (cited at Chandra Br. 15), is similar. That court held that DOHSA did not apply where the alleged negligence (failure to warn of the dangers of a zip-line) had occurred on a vessel at sea but the death (falling from the zip-line) had occurred on land. *Id.* at 1354–1355. The court explained that the "cause of action under DOHSA accrues at the time and place where an allegedly wrongful act or omission was consummated in an actual injury," "not at the point where previous or subsequent negligence allegedly occurred." *Id.* at 1354 (citation omitted). This case is obviously very different: Plaintiffs' decedents died on the high seas rather than on land, so the DOHSA cause of action accrues and supersedes any other claim to recovery.

Plaintiffs also cite (Chandra Br. 15) *Bernard* v. *World Learning Inc.*, No. 09-cv-20309, 2010 WL 11505188 (S.D. Fla. June 4, 2010), where the court found that it could not apply DOHSA at summary judgment because the decedent might have been fatally injured during an earth slide *on land* that pushed him into the ocean. *Id.* at *7. *Bernard* has no relevance here, where Plaintiffs have no allegations or evidence that any decedent died over land aboard Lion Air Flight JT610.

Plaintiffs also re-invoke the same authorities that the district court properly rejected. *See* A13. They cite one case (Chandra Br. 15) where the decedent died from cumulative asbestos exposure that had occurred indivisibly over time—partly on land, partly in territorial waters, and partly on the high seas. *See Hays* v. *John Crane, Inc.*, No. 09-cv-81881, 2014 WL 10658453, at *1–2 (S.D. Fla. Oct. 10, 2014). Here the decedents suffered one fatal injury in the Java Sea—nowhere else—even if they allegedly also experienced some non-fatal injuries before the crash. And where, as

here, the deaths in question occurred entirely on the high seas, DOHSA applies and preempts all other claims. *See, e.g.*, *LaCourse*, 980 F.3d at 1357 ("a death on the high seas is a sufficient condition to DOHSA's application"); *Kennedy* v. *Carnival Corp.*, 385 F. Supp. 3d 1302, 1316 (S.D. Fla. 2019) (DOHSA applies where "the injury that led to the Decedent's death occurred in the water").

### 3. DOHSA does not permit common law claims for property lost in a fatal airplane crash.

Finally, Plaintiffs are barred from supplementing DOHSA's allowable damages with claims seeking recovery for the loss of their loved ones' personal property. *Contra* Chandra Br. 18–20.

Again, Congress created DOHSA as an "exclusive" remedy that determines the full range of damages that are (and are not) available to a plaintiff whose family member died on the high seas. Congress specified that the DOHSA cause of action authorizes only compensation for the losses sustained *directly* by the decedent's spouse, parent, child, or dependent relative because of the death. "The recovery in an action under this chapter shall be a fair compensation for the pecuniary loss sustained by the individuals for whose benefit the action is brought." 46 U.S.C. § 30303; *see id.* § 30302 ("The action shall be for the exclusive benefit of the decedent's [family members].")." Congress "d[id] not authorize recovery for the decedent's own losses." *Dooley*, 524 U.S. at 122. That clear prohibition precludes Plaintiffs from recovering for their decedents' lost "personal effects" such as "laptop[s], luggage, clothes, etc." Chandra Br. 18. And in particular, Plaintiffs may not do what they attempted in the

district court here: to use those claims as a vehicle to seek supplemental forms of damages that DOHSA precludes. *See* p. 37, *supra*.[9]

Plaintiffs have not offered any valid basis for using their lost property claim to evade DOHSA's preemptive sweep. Plaintiffs argue that, before DOHSA, "the common law had recognized a right to sue for negligently damaging property," so there was no "reason for Congress to concern itself with property-damage claims." Chandra Br. 19. But Plaintiffs have not established that a lost property claim would have overcome the common law rule that "a right of action was personal to the victim and thus expired when the victim died." *Dooley*, 524 U.S. at 121. And in any event, the text is clear: "The [DOHSA] action shall be for the exclusive benefit of the decedent's" family members and the "[t]he recovery … shall be … for" *their* "loss." 46 U.S.C. §§ 30302, 30303. Congress authorized recovery only for *family members*' losses, not the decedent's losses.

Plaintiffs' cited cases do not support their claim. In *Smith* v. *Pan Air Corp.*, 684 F.2d 1102 (5th Cir. 1982), a helicopter pilot died in the Gulf of Mexico after colliding with part of a drilling rig. *Id.* at 1105. The pilot's widow sued under DOHSA for her husband's death, and the helicopter's owner (Petroleum Helicopter) sued for the loss

---

[9] That is not to say DOHSA denies plaintiffs *any* recovery related to valuable lost property, but those claims must be pleaded through DOHSA and subject to its remedial limits. If Mr. Chandra, for example, had allegedly lost an heirloom watch in the crash, then his family members potentially could bring their *own* wrongful death claim under DOHSA for "fair compensation for the pecuniary loss" that would have become part of their inheritance. 46 U.S.C. § 30303; *see Nygaard* v. *Peter Pan Seafoods, Inc.*, 701 F.2d 77, 80 (9th Cir. 1983) ("Loss of inheritance is a pecuniary loss recoverable under DOHSA where it is probable that the decedent, but for his death, would have accumulated property that would have been inherited by the beneficiaries of the action.").

of its helicopter. *Id.* at 1105, 1112. The Fifth Circuit said in passing that Petroleum Helicopter's property claim—in contrast to the widow's wrongful death claim—was "patently not affected by DOHSA." *Id.* at 1112. That was obviously correct because Petroleum Helicopter was not a beneficiary under DOHSA and never had any DOHSA claim, so the statute did not preclude any other claim by the company. Contrary to Plaintiffs' argument (Chandra Br. 19–20), *Smith* nowhere suggests that plaintiffs who *do* have valid DOHSA claims for a death on the high seas may also bring a property claim based on the same sequence of events.

*Gund* v. *Pilatus Aircraft, Ltd.*, Nos. C07-4902, C08-3795, 2010 WL 887376 (N.D. Cal. Mar. 11, 2010) (cited at Chandra Br. 19–20) likewise does not support Plaintiffs' argument. The plaintiff there asserted claims for property damage along with wrongful death and survival claims arising out of a fatal plane crash off the coast of Costa Rica. *Id.* at *1. The defendant did not move to dismiss the property damage claims and the issue of DOHSA preemption was never litigated. *Id.* at *8. When the claim is contested—as it is here—a separate property claim cannot supplement or alter what "Congress provided [as] the exclusive recovery for deaths that occur on the high seas." *Dooley*, 524 U.S. at 123.

This Court should reject Plaintiffs' attempt to circumvent DOHSA's remedies and affirm the district court's conclusion that DOHSA precludes all other claims for relief arising from this fatal accident on the high seas.

## Conclusion

The district court's order should be affirmed.

Respectfully submitted,

Nicholas C. Bart
  *Counsel of Record*
Fitzpatrick, Hunt & Pagano LLP
10 S. LaSalle Street, Suite 3400
Chicago, IL 60603
Telephone: (312) 728-4900
nick.bart@fitzhunt.com

*Counsel for Defendants-Appellees*
*Rockwell Collins, Inc. and Rosemount*
*Aerospace, Inc.*

Michael R. Huston*
  *Counsel of Record*
Mack H. Shultz, Jr.
Eric B. Wolff
Lauren Pardee Ruben
Perkins Coie LLP
2901 N. Central Avenue
Suite 2000
Phoenix, AZ 85012-2788
Telephone: (202) 434-1630
mhuston@perkinscoie.com

* Admitted only in Washington, D.C.

*Counsel for Defendants-Appellees The Boeing*
*Company, Boeing Int'l Sales Corporation,*
*Boeing Domestic Sales Corporation, Boeing*
*Sales Corporation, and Boeing Financial*
*Corporation*

September 20, 2023

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume requirement of Circuit Rule 32(c) because it contains 13,869 words, as determined by the word count function of Microsoft Word, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Circuit Rule 32(b) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Century Schoolbook font.

*s/ Michael R. Huston*
PERKINS COIE LLP
2901 N. Central Avenue
Suite 2000
Phoenix, AZ 85012-2788
Telephone: (202) 434-1630
mhuston@perkinscoie.com

**CERTIFICATE OF SERVICE**

I, Michael R. Huston, certify that on September 20, 2023, I electronically filed the foregoing Joint Response Brief of Defendants-Appellees with the Clerk of the Court for the U.S. Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 20th day of September 2023.

*s/ Michael R. Huston*
PERKINS COIE LLP
2901 N. Central Avenue
Suite 2000
Phoenix, AZ 85012-2788
Telephone: (202) 434-1630
mhuston@perkinscoie.com

ADDENDUM

<u>Judiciary Act</u>. Statute of Sept. 24, 1789, 1st Congress, 1st Session, Chapter 20, § 9, 1 Stat. 76–77 (excerpted):

Sec. 9.  That the district courts … shall also have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including all seizures under laws of impost, navigation or trade of the United States, where the seizures are made, on waters which are navigable from the sea by vessels of ten or more tons burthen, within their respective districts as well as upon the high seas; (a) saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it. … And the trial of issues of fact, in the district courts, in all causes except civil causes of admiralty and maritime jurisdiction, shall be by jury.

28 U.S.C. § 1333 (excerpted):

The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

<u>Death on the High Seas Act</u>. Public Law No. 165, 66th Congress, 2d Session, Chapter 111, 41 Stat. 537 (March 30, 1920) (excerpted):

Sec. 1.  That whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued.

Sec. 2.  That the recovery in such suit shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought and shall be apportioned among them by the court in proportion to the loss they may severally have suffered by reason of the death of the person by whose representative the suit is brought.

Sec. 3.  That such suit shall be begun within two years from the date of such wrongful act, neglect, or default, …

Sec. 4.  That whenever a right of action is granted by the law of any foreign State on account of death by wrongful act, neglect, or default occurring upon the high seas, such right may be maintained in an appropriate action in admiralty in the courts of the United States without abatement in respect to

Add.1

the among for which recovery is authorized, any statute of the United States to the contrary notwithstanding.

Sec. 5.  That if a person die as the result of such wrongful act, neglect, or default as it mentioned in section 1 during the pendency in a court of admiralty of the United States of a suit to recover damages for personal injuries in respect of such act, neglect, or default, the personal representative of the decedent may be substituted as a party and the suit may proceed as a suit under this Act for the recovery of the compensation provided in section 2.

Sec. 6.  That in suits under this Act the fact that the decedent has been guilty of contributory negligence shall not bar recovery, but the court shall take into consideration the degree of negligence attributable to the decedent and reduce the recovery accordingly.

Sec. 7.  That the provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this Act. …

…

46 U.S.C. § 30301:

This chapter may be cited as the "Death on the High Seas Act."

46 U.S.C. § 30302:

When the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States, the personal representative of the decedent may bring a civil action in admiralty against the person or vessel responsible. The action shall be for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative.

46 U.S.C § 30303:

The recovery in an action under this chapter shall be a fair compensation for the pecuniary loss sustained by the individuals for whose benefit the action is brought. The court shall apportion the recovery among those individuals in proportion to the loss each has sustained.

46 U.S.C § 30304:

In an action under this chapter, contributory negligence of the decedent is not a bar to recovery. The court shall consider the degree of negligence of the decedent and reduce the recovery accordingly.

46 U.S.C § 30305:

If a civil action in admiralty is pending in a court of the United States to recover for personal injury caused by wrongful act, neglect, or default de-

scribed in section 30302 of this title, and the individual dies during the action as a result of the wrongful act, neglect, or default, the personal representative of the decedent may be substituted as the plaintiff and the action may proceed under this chapter for the recovery authorized by this chapter.

46 U.S.C § 30306:

When a cause of action exists under the law of a foreign country for death by wrongful act, neglect, or default on the high seas, a civil action in admiralty may be brought in a court of the United States based on the foreign cause of action, without abatement of the amount for which recovery is authorized.

46 U.S.C. § 30307:

(a) Definition.—In this section, the term "nonpecuniary damages" means damages for loss of care, comfort, and companionship.

(b) Beyond 12 nautical miles.—In an action under this chapter, if the death resulted from a commercial aviation accident occurring on the high seas beyond 12 nautical miles from the shore of the United States, additional compensation is recoverable for nonpecuniary damages, but punitive damages are not recoverable.

46 U.S.C § 30308:

(a) State law.—This chapter does not affect the law of a State regulating the right to recover for death.

(b) Internal waters.—This chapter does not apply to the Great Lakes or waters within the territorial limits of a State.